[Cite as *Rupert v. Dept. of Rehab. & Corr.*, 2017-Ohio-8377.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kenneth Rupert, | : | |
| Appellant-Appellant, | : | |
| | | No. 17AP-173 |
| v. | : | (C.P.C. No. 16CV-662) |
| Ohio Department of Rehabilitation and Correction, | : | (ACCELERATED CALENDAR) |
| | : | |
| Appellee-Appellee. | : | |
| | : | |

———————

D E C I S I O N

Rendered on October 31, 2017

———————

**On brief:** *James J. Leo Law Office*, and *James J. Leo*, for appellant.

**On brief:** *Michael DeWine*, Attorney General, and *Tracy M. Nave*, for appellee.

———————

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Appellant, Kenneth Rupert, appeals a judgment of the Franklin County Court of Common Pleas that affirmed the order of the State Personnel Board of Review ("Board") modifying the discipline imposed by appellee, the Ohio Department of Rehabilitation and Correction ("ODRC"). For the following reasons, we affirm that judgment.

{¶ 2} From April 2006 to September 2014, Rupert worked as a unit manager at the Toledo Correctional Institution ("TCI"). On September 2, 2014, ODRC removed

Rupert from his position.  ODRC cited multiple reasons for Rupert's removal, including: (1) he failed to follow a direct order to complete monthly tracking forms, (2) he failed to follow a direct order to ensure that the security threat group committee approved all prisoner bed moves, (3) he failed to complete inventories of TCI's barbershop equipment and supplies, (4) he failed to perform his duties as TCI's coordinator for the Ohio Risk Assessment System ("ORAS"), (5) he failed to keep his unit's portion of the contraband vault tidy and organized, (6) he failed to upload minutes from weekly unit meetings and quarterly town hall meetings to TCI's intranet.

{¶ 3}   Rupert appealed his removal to the Board.  Both Rupert and ODRC presented evidence regarding Rupert's employment and removal at a hearing before an administrative law judge.  Subsequent to the hearing, the administrative law judge issued a report and recommendation setting forth her findings of fact and conclusions of law.  In short, the administrative law judge found only two of the grounds cited by ODRC justified discipline against Rupert:  (1) his failure to complete barbershop inventories, and (2) his failure to perform his duties as ORAS coordinator.  The administrative law judge concluded that, while these failings did not warrant removal, they demonstrated that Rupert's duties overwhelmed him, rendering him an ineffective supervisor.  Thus, the administrative law judge recommended that the Board modify Rupert's removal to a reduction in position and reinstate Rupert to the highest non-supervisory position under a unit manager.

{¶ 4}   In an order dated December 18, 2015, the Board adopted the administrative law judge's findings, modified Rupert's removal to a reduction in position, and reinstated Rupert to the highest non-supervisory position under a unit manager.  The Board made the demotion and reinstatement effective December 2, 2015.

{¶ 5}   Three days after issuing its order, the Board stayed that order until its next scheduled Board meeting.  Rupert took advantage of the stay by asking the Board to clarify its position on the issue of whether he should receive back pay.  In an order dated January 6, 2016, the Board stated that "*the intent of this Board is that back pay for* [Rupert] *is to run from December 2, 2015 until the effective date of* [Rupert's] *reinstatement with* [ODRC]."  (Emphasis sic; Jan. 6, 2016 Order.)   The Board then stated, "[I]t is hereby **ORDERED** that [Rupert's] removal be modified to a reduction and

that [Rupert] be reinstated to a classification assigned to the highest non-supervisory position under a Unit Manager, all to be effective December 2, 2015, pursuant to R.C. 124.03 and R.C. 124.34." (Emphasis sic.) *Id.*

{¶ 6} Rupert appealed the Board's order to the trial court. The trial court affirmed the Board's order in a judgment entered February 27, 2017.

{¶ 7} Rupert now appeals the February 27, 2017 judgment, and he assigns the following errors:

> [1.] The Lower Court Erred By Finding that Mr. Rupert Failed to Perform ORAS Quality Reviews Because There Was No Due Date Set For When the Reviews Must Be Completed And, Given One Interpretation of an Applicable ORAS Policy, Rupert Was Terminated Six Months Before the Reviews Were Due[.]
>
> [2.] The Lower Court Erred In Using the Barbershop Inventory Issue, the Only Charge Established by [O]DRC, As A Sufficient Basis For Demoting Rupert, a Fourteen[-]Year [O]DRC Employee, Since He Had More Critical Safety Issues to Deal with Than Barbershop Supplies.
>
> [3.] The Lower Court Erred in Ruling that Mr. Rupert Was Not Entitled to Back Pay For the Unlawful Termination Period; Because, In Denying Such Back Pay, the Lower Court Fails to Make Mr. Rupert Whole From the Unlawful Termination.

{¶ 8} Preliminarily, we must define the scope of our review. Rupert includes in his brief arguments unrelated to his assignments of error. Courts of appeal must determine each appeal "on its merits on the assignments of error set forth in the briefs under App.R. 16." App.R. 12(A)(1)(b). Thus, generally, appellate courts rule on assignments of error only, and do not address mere arguments. *Bonn v. Bonn*, 10th Dist. No. 12AP-1047, 2013-Ohio-2313, ¶ 9. Applying App.R. 12(A)(1)(b) here, we will only review Rupert's assignments of error, and we will disregard any arguments unrelated to those assignments of error.

{¶ 9} Rupert appeals under R.C. 119.12. Pursuant to R.C. 119.12(M), when a common pleas court reviews an order of an administrative agency, it must consider the entire record to determine if the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. To be "reliable," evidence must be

dependable and true within a reasonable probability. *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). To be "probative," evidence must be relevant or, in other words, tend to prove the issue in question. *Id.* To be "substantial," evidence must have importance and value. *Id.*

{¶ 10} In conducting a review of the administrative record, a common pleas court must "appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof." *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). A common pleas court must give due deference to the administrative resolution of evidentiary conflicts, but the court must not treat the agency's findings of facts as conclusive. *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 470 (1993). " 'Where the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate or modify the administrative order.' " *Id.* at 470-71, quoting *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980).

{¶ 11} An appellate court's review of an administrative order is more limited than that of a common pleas court reviewing the same order. *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, ¶ 41. Instead of appraising the weight of the evidence, an appellate court determines whether the common pleas court abused its discretion in its examination of the record for reliable, probative, and substantial evidence. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). Absent an abuse of discretion, an appellate court must affirm the common pleas court's judgment, even if the appellate court would have arrived at a different conclusion than that of the common pleas court. *Bartchy* at ¶ 42.

{¶ 12} In determining whether an administrative order is in accordance with law, a common pleas court must undertake its reviewing task completely independently. *Ohio Historical Soc.* at 471. Likewise, an appellate court's review on issues of law is plenary. *Bartchy* at ¶ 43.

{¶ 13} By his first assignment of error, Rupert argues that the trial court abused its discretion in finding that he failed to complete his duty as the ORAS coordinator to perform quality reviews. We disagree.

{¶ 14} ORAS provides a comprehensive method of assessing each inmate's risk and needs. ORAS assessments facilitate the development of a case plan for reducing the risk the inmate will reoffend. Generally, a case manager must assess an inmate with the prison intake tool ("PIT") within 90 days of the inmate's arrival at a prison such as TCI. Additionally, the case manager must develop a case plan based upon the PIT assessment no later than 90 days after the inmate's arrival.

{¶ 15} An ORAS coordinator ensures that ORAS policy and procedure are enforced at a particular institution. An ORAS coordinator's duties include tracking inmates' progress through the ORAS process, notifying the case managers of assessment and planning deadlines, and conducting and documenting quality reviews of the assessments and case plans.

{¶ 16} TCI's June 2013 internal management audit revealed that TCI had failed to comply with ORAS policy and procedure. TCI's operational manager met with Rupert and Meredith Rinna, Rupert's direct supervisor, to discuss the audit's findings. In that meeting, the operational manager designated Rupert as TCI's ORAS coordinator and discussed the coordinator's duties with Rupert. Then, in an email dated February 26, 2014 and sent to Rupert and other TCI employees, Rinna stated, "Ken Rupert is our ORAS [c]oordinator," and specified Rupert's duties as ORAS coordinator. (Appellee's Ex. 20.)

{¶ 17} Rupert, however, never performed any of his coordinator duties. The audit report issued after ODRC's March 2014 audit of TCI stated that TCI failed to complete the ORAS assessments and case plans as required. The audit report also noted the lack of documentation of quality reviews of the assessments and case plans. Rinna testified that Rupert was responsible for these failures.

{¶ 18} In June 2014, Rinna created a local policy to further explicate the ORAS process. Rinna conducted training, which Rupert attended, regarding the new policy. According to Rinna, Rupert did not follow that policy.

{¶ 19} Before the Board, Rupert admitted that he never performed any of the ORAS coordinator's duties. He argued that he had no responsibility to perform those duties because he was the ORAS trainer, not the ORAS coordinator, for TCI. Alternatively, Rupert contended that ODRC's failure to set a deadline for the completion of ORAS quality reviews excused his failure to perform those quality reviews.

{¶ 20} Both the Board and the trial court rejected Rupert's arguments. The Board and the trial court found that the evidence established that Rupert was TCI's ORAS coordinator and he did not complete his duties as coordinator.

{¶ 21} Before this court, Rupert solely argues that the trial court erred in concluding that he did not perform quality reviews because the reviews were not due until February 26, 2015—approximately six months after Rupert's removal. This argument fails for two reasons. First, neither ODRC nor TCI assigned a due date to the ORAS coordinator's duty to perform quality reviews. Rupert made up the February 26, 2015 deadline, and nothing in the record supports it. Rather, the evidence shows that the completion of quality reviews was a constant, continuing responsibility of the ORAS coordinator that Rupert did not accomplish even once. Second, even if we credited Rupert's allegation that the February 26, 2015 deadline existed, that deadline would not change the fact that Rupert never performed any quality reviews. At best, the existence of the deadline would explain, and perhaps mitigate, Rupert's failure to perform prior to his removal. It would not give us reason to conclude that the trial court abused its discretion in finding Rupert's nonperformance was supported by reliable, probative, and substantial evidence.

{¶ 22} Finally, completion of quality reviews was only one duty of the ORAS coordinator. Rupert, admittedly, did not perform any of the ORAS coordinator's duties. Consequently, even if Rupert had conducted quality reviews, the trial court would not have abused its discretion in finding that Rupert failed to fulfill his responsibilities as ORAS coordinator. Accordingly, we overrule Rupert's first assignment of error.

{¶ 23} By his second assignment of error, Rupert argues that demotion is too harsh a penalty for his shortcomings, particularly in light of the demanding nature of his position as unit manager. Rupert contends that the trial court erred in not reversing that penalty as unreasonable. We disagree.

{¶ 24} A reviewing court cannot modify a sanction that an agency has legal authority to impose if reliable, probative, and substantial evidence supports the agency's order. *Henry's Café Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233 (1959), paragraphs two and three of the syllabus. Thus, if the law permits the chosen sanction and evidence sustains the agency's decision, then a court may not substitute its judgment for the

agency's.  *Pope v. Ohio State Dept. of Rehab. & Corr.*, 179 Ohio App.3d 377, 2008-Ohio-5064, ¶ 17 (10th Dist.); *Franklin Cty. Sheriff v. Frazier*, 174 Ohio App.3d 202, 2007-Ohio-7001, ¶ 16, 23 (10th Dist.).  As a practical matter, consequently, a court has no ability to review a penalty on the basis that it seems unreasonable or unduly harsh.  *Wolfe v. Accountancy Bd.*, 10th Dist. No. 16AP-453, 2016-Ohio-8542, ¶ 16.

{¶ 25} The General Assembly has authorized the Board to hear an employee's appeal from an appointing authority's removal order and to "affirm, disaffirm, or modify" that order.  R.C. 124.03(A)(1); 124.34(B); *accord Frazier* at ¶ 12.  The power to modify an appointing authority's order permits the Board to accept the agency's adjudication but change the punishment.  *Ohio State Univ. v. Kyle*, 10th Dist. No. 06AP-168, 2006-Ohio-5517, ¶ 24; *accord Cuyahoga Cty. Bd. of Commrs. v. Smiley*, 8th Dist. No. 77448 (Oct. 26, 2000) (holding that the Board acted within the law when it modified a removal to a suspension and demotion).  In this case, the Board essentially did that.  It concluded that Rupert had violated ODRC's standards of employee conduct, but it found that his noncompliance did not warrant removal.  The Board, therefore, acted within its authority when it lessened the discipline that ODRC imposed to a demotion.

{¶ 26} The trial court found that reliable, probative, and substantial evidence supported the Board's order.  To the extent that Rupert has challenged that finding on appeal, we have rejected his argument.  Thus, we conclude that the Board imposed a legally authorized sanction and reliable, probative, and substantial evidence supported the Board's decision.  Accordingly, the trial court properly declined to review the severity of the sanction, and we overrule Rupert's second assignment of error.

{¶ 27} By his third assignment of error, Rupert argues that the trial court erred in ruling that he was not entitled to back pay from the date of his removal (September 2, 2014) until the date of his reinstatement (December 2, 2015).  We disagree.

{¶ 28} As we stated above, the Board has the power to "affirm, disaffirm, or modify" any order of an appointing authority that removes an employee from his position.  R.C. 124.03(A)(1); 124.34(B); *accord Frazier* at ¶ 12.  Generally, the question of back pay does not arise unless the Board disaffirms the appointing authority's removal order.  When that happens, the employee becomes entitled to compensation for the period of

time during which he was wrongfully excluded from his position.  *Monaghan v. Richley*, 32 Ohio St.2d 190, 194 (1972).

{¶ 29} However, there are two impediments to the Board ruling on the right to back pay.  First, "[b]ack pay may not be available in SPBR appeals because SPBR has jurisdiction only to affirm, disaffirm, or modify decisions of appointing authorities." *State ex rel. Weiss v. Indus. Comm.*, 65 Ohio St.3d 470, 476 (1992).  Thus, the Board may lack the statutory authority necessary to issue orders regarding back pay.  Second, the focus of a Board hearing is on the lawfulness, reasonableness, and propriety of the employee's removal, and not the compensation due to the employee if he succeeds in his appeal of that removal.  Thus, as a practical matter, the Board is unlikely to have before it sufficient evidence to calculate the back pay due.

{¶ 30} Given the impediments to Board-awarded back pay, Ohio courts have provided an alternative method of remedy to public employees who are reinstated to employment due to a Board order.  Those employees may seek back pay through a writ of mandamus provided that the Board first renders "a final determination * * * that the employee was 'wrongfully excluded from employment.' " *Weiss* at 476; *accord Monaghan* at syllabus ("An action in mandamus is maintainable by a reinstated public employee to recover compensation due to him for the period of time during which he was wrongfully excluded from his employment, provided the amount recoverable is established with certainty.").

{¶ 31} Here, Rupert sought to short-circuit the mandamus process by asking the Board to clarify its position on whether he should receive back pay.  In response, the Board stated that "*the intent of this Board is that back pay for* [Rupert] *is to run from December 2, 2015 until the effective date of* [Rupert's] *reinstatement with* [ODRC]." (Emphasis sic; Jan. 6, 2016 Order.)  Importantly, the Board merely expressed its intent regarding back pay; it did not order the payment of back pay or rule regarding Rupert's entitlement to back pay.  The Board ordered (1) the modification of ODRC's removal order to a demotion and (2) Rupert's reinstatement, and nothing else.  Therefore, the Board's statement regarding back pay amounts to nothing more than an advisory opinion.

{¶ 32} Nevertheless, in appealing the Board's order to the trial court, Rupert maintained the Board had ruled regarding his entitlement to back pay.  Rupert argued

that the Board erred in restricting the duration of time for which he was entitled to back pay to the period between December 2, 2015 and his return to work. In considering this argument, the trial court found "the timing of back pay" constituted part of the penalty the Board assessed for Rupert's misconduct. (Feb. 27, 2017 Decision & Jgmt. Entry at 9.) The trial court then determined that it could not second-guess the appropriateness of that penalty.

{¶ 33} While the trial court correctly concluded that it could not review the question of back pay, we do not agree with the reasoning underlying the trial court's conclusion. An advisory opinion is not subject to appeal. *Forest Hills Local School Dist. Bd. of Edn. v. Huegel*, 12th Dist. No. CA2002-07-050, 2003-Ohio-3444, ¶ 12; *State v. Johnson*, 10th Dist. No. 97APA05-727 (Dec. 9, 1997); *see Walther v. Cent. Trust Co., N.A.*, 70 Ohio App.3d 26, 34 (2d Dist.1990) ("An 'appellant cannot appeal dicta.' "). Consequently, Rupert could not appeal the Board's statement regarding back pay to the trial court. The trial court, therefore, did not err in refusing to review that statement.

{¶ 34} Moreover, before this court, Rupert overstates the trial court's decision regarding back pay. Rupert maintains that the trial court ruled that he was not entitled to back pay for the period from his September 2, 2014 removal to his December 2, 2015 reinstatement. The trial court, however, never rendered such a ruling. The Board expressed its intent regarding the appropriate back-pay period, and the trial court declined to review that intent. As the trial court did not make the ruling Rupert contests in his third assignment of error, we overrule that assignment.

{¶ 35} For the foregoing reasons, we overrule each of Rupert's three assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and BRUNNER, JJ., concur.