[Cite as *Avalon Resort & Spa, L.L.C. v. Unemp. Comp. Rev. Comm.*, 2018-Ohio-4294.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Avalon Resort and Spa LLC, | : | |
| Appellant-Appellant, | : | |
| | : | No. 18AP-212 |
| v. | : | (C.P.C. No. 17CVF-9763) |
| State of Ohio Unemployment Compensation Review Commission, | : | (ACCELERATED CALENDAR) |
| | : | |
| Appellee-Appellee. | : | |
| | : | |

---

D E C I S I O N

Rendered on October 23, 2018

---

**On brief:** *Brouse McDowell, LPA*, and *Peter B. Grinstein*, for appellant.

**On brief:** *Michael DeWine*, Attorney General, and *Susan M. Sheffield*, for appellee.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Appellant, Avalon Resort and Spa LLC, appeals the February 28, 2018 decision of the Franklin County Court of Common Pleas that affirmed the decision of appellee, Unemployment Compensation Review Commission ("commission"), finding appellant was an employer liable for contributions to the unemployment compensation fund. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On April 15, 2017, the Ohio Department of Job and Family Services, Office of Unemployment Compensation ("ODJFS") sent appellant a document titled Ohio Unemployment Tax Notification Determination of Employer's Liability and Contribution Rate Determination ("determination") notifying appellant that it was a liable employer

under Ohio unemployment compensation law. In the determination, ODJFS found that appellant employed Richard J. Pilla and set contribution rates for appellant for 2014-2017 as applied to Pilla "together with all individuals rendering similar services, whether executive or manual, as the services do not fall within the context of excluded employment" as required under R.C. 4141.26. (ODJFS Ex. A.)

{¶ 3} On May 3, 2017, appellant filed a request for reconsideration of the determination, arguing that Pilla was working as an independent contractor. On May 4, 2017, Megan Robinson, attorney for ODJFS, sent appellant a letter requesting additional documentation. On May 17, 2017, appellant sent ODJFS a letter containing additional documentation in response to the May 4, 2017 letter. On June 1, 2017, ODJFS issued a Director's Reconsidered Decision ("director's decision") affirming the determination.

{¶ 4} On June 22, 2017, appellant filed an application for review of the director's decision. On September 19, 2017, a hearing officer for the commission held a hearing by telephone.

{¶ 5} At the hearing, Pilla stated he was a massage therapist licensed by the state of Ohio. After discovering a job opportunity with appellant on the internet, Pilla sent appellant his resume and participated in an interview. On January 6, 2017, he signed a Massage Therapist Agreement ("the agreement"), which was admitted into evidence, to provide massage therapy services at appellant's facility in Warren, Ohio. Pilla stated it was his understanding that under the agreement he was providing services to appellant as an independent contractor. Pilla did not draft or edit the agreement; rather, it was presented to him by Penni Mokros, the spa director for appellant, who signed the agreement on behalf of appellant. Pilla began providing services for appellant in February 2017. While he was providing services for appellant, Pilla was also employed as a licensed massage therapist at Cleveland State University.

{¶ 6} Pilla agreed that "as a massage therapist, [he was] an independent contractor and not an employee of [appellant]" and, as such, was required to pay his own taxes and provide his own professional liability insurance. (ODJFS Ex. B.) The agreement contained the following provisions related to payment for Pilla's services:

> As a convenience to the [appellant] members and guests, and
> as an accommodation to [Pilla], * * * [appellant] has agreed to
> bill the member's account or the guest's room and collect

> monies for services rendered by [Pilla]. [Appellant] will retain a portion of the collected monies as payment for the rental of space, scheduling services, use of [appellant's] equipment, and promotion of [Pilla's] services to [appellant's] members and guests.

(ODJFS Ex. B.)  Pilla agreed to "present [appellant] in a positive light and encourage members and guests to participate in the services offered by [appellant] to the fullest extent possible" and to "NOT solicit the members and guests of [appellant] to other locations where I also provide massage therapy services." (Emphasis sic.) (ODJFS Ex. B.)  The agreement did not specify a termination date, and Pilla stated the agreement had never been terminated.

{¶ 7}  Pilla testified he did not discuss or otherwise negotiate the prices for his services with appellant. Instead, he stated that "when I had the interview for * * * the job, I was instructed, or I was told these were the price structures, these were the fees that were being charged; these are the fees that I would be receiving." (Tr. at 42.)  Appellant provided Pilla with supplies, including a massage table and towels. Pilla testified he did not provide appellant any money for utilities.

{¶ 8}  According to Pilla, appellant had no right to control how he performed his massage services and did not train him in any respect on how to perform his services. However, Pilla stated he was required to provide a record or report of his services for a client. In the course of performing services for appellant, Pilla submitted his availability to appellant but could only schedule appointments with clients at appellant's facility during their hours of operation.

{¶ 9}  Pilla filed an application for unemployment benefits on January 26, 2017, and filed an additional application for unemployment benefits on March 14, 2017.  Pilla stated he was not doing any work for appellant or Cleveland State University when he filed his application for benefits.

{¶ 10} Mokros testified she did not negotiate any of the terms of the agreement with Pilla.  Pilla was required to conform his hours to appellant's availability.  Pilla was also required to maintain his license and obtain his own professional liability insurance, which had to include coverage for appellant.

{¶ 11} According to Mokros, clients were charged a specific amount based on the type of service Pilla provided and the duration of the services.  From the amount charged

to a client, appellant would deduct a certain portion to pay for Pilla's rent, utilities, promotion of services, equipment, and other expenses. Although appellant set the prices for Pilla's services, Mokros stated that Pilla agreed to those prices. However, Mokros also testified the agreement did not contain terms related to the prices for Pilla's services. Furthermore, the agreement did not specify the amounts appellant would deduct from payments made by Pilla's clients.

{¶ 12} Cindy Shaffer, director of human resources for appellant, testified appellant did not control or supervise Pilla in any aspect of his services, including the hours he worked or the training he was required to complete. Shaffer stated either appellant or Pilla could terminate their relationship at any time. Shaffer denied Pilla was required to make any reports, though he was required to notify appellant that he performed services on clients for billing purposes.

{¶ 13} According to Shaffer, appellant collected money for Pilla's services "[a]s a convenience to [Pilla's] customers." (Tr. at 84.) Appellant would then pay Pilla twice a month for the services he performed, less deducted expenses. Shaffer stated "[i]t is strictly for convenience sake that [Pilla] * * * will receive the net from his massage therapy services. And, that's after [appellant] will take out for rent, the promotion of his services, any equipment rental, things like that." (Tr. at 90.)

{¶ 14} Shaffer stated the person to whom Pilla provided massage services were his clients. However, she also stated they were appellant's "members and/or guests." (Tr. at 95.) According to Shaffer, Pilla had the ability to accept or reject any assignment. She stated Pilla was "free to perform massage therapy services at any location he desires," but that, for appellant, he would have to perform his services at their facility and pay to use such facility. (Tr. at 88.)

{¶ 15} Robinson, attorney for ODJFS, testified she reviewed appellant's request for reconsideration of the determination. In her review of appellant's arguments and the additional documentation submitted by appellant, Robinson found there was "some indication of independence" regarding Pilla's relationship with appellant. (Tr. at 13.) Specifically, Robinson cited the fact that Pilla paid for his own professional liability insurance and his work for other businesses as factors tending to show independence. Robinson contacted Pilla, from whom she learned that appellant provided all his supplies,

set the prices for his services, and collected money from clients. As a result of her investigation, Robinson concluded appellant was a covered employer.

{¶ 16} On October 16, 2017, the commission issued a decision affirming the director's decision. On October 31, 2017, appellant filed a notice of appeal in the common pleas court and the commission. On November 10, 2017, appellant filed an amended notice of appeal. On February 28, 2018, after having been fully briefed by the parties, the common pleas court filed a decision and entry affirming the October 16, 2017 decision of the commission.

## II. Assignment of Error

{¶ 17} Appellant appeals and assigns the following single assignment of error for our review:

> The Court of Common Pleas erred by affirming the Reconsidered Decision of the Unemployment Compensation Review Commission which determined that Appellant is a liable employer under Ohio law, and that Richard J. Pilla and all other individuals rendering similar services are engaged in covered employment rather than providing services as independent contractors. As a matter of law, the independent contractor agreement, Ohio Administrative Code § 4141-3-05 and R.C. § 4141.01(B)(1) defining "employment," and R.C. § 4141.01(A)(1)(a) defining "employer," as well as case law, overwhelming support the establishment of an independent contractor relationship. The court's decision was not in accordance with law, is against the manifest weight of the evidence, and constitutes an abuse of discretion.

## III. Discussion

{¶ 18} In its assignment of error, appellant contends the common pleas court applied the incorrect standard of review. Additionally, appellant contends the common pleas court's decision was not in accordance with law, was against the manifest weight of the evidence, and constitutes an abuse of discretion.

## A. Standard of Review

{¶ 19} On appeal from a decision of the commission regarding unemployment compensation contributions or the amount of such contributions, the common pleas court applies the standard of review set forth in R.C. 4141.26(D)(2), which states the court "may affirm the determination or order complained of in the appeal if it finds, upon consideration

of the entire record, that the determination or order is supported by reliable, probative, and substantial evidence and is in accordance with law." To be "reliable," evidence must be dependable and true within a reasonable probability. *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). *See also Rupert v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 17AP-173, 2017-Ohio-8377, ¶ 9. To be "probative," evidence must be relevant or, in other words, tend to prove the issue in question. *Id.* To be "substantial," evidence must have importance and value. *Id.*

{¶ 20} Our review is more limited than that of the common pleas court. As to factual issues, we apply an abuse of discretion standard. *Miracle Home Health Care, LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-318, 2012-Ohio-5669, ¶ 18. An abuse of discretion occurs when a court's judgment is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). " 'Absent an abuse of discretion on the part of the common pleas court, this court is obligated to affirm its judgment.' " *BNA Constr., Ltd. v. Dir. of Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 16AP-317, 2017-Ohio-7227, ¶ 25, quoting *Stouffer Hotel Mgt. Corp. v. Ohio Unemp. Comp. Bd. of Review*, 87 Ohio App.3d 179, 183 (10th Dist.1993); *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988). However, our review of questions of law is plenary. *BNA* at ¶ 25, citing *BRT Transp., LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-800, 2015-Ohio-2048, ¶ 15.

## B. Applicable Law

{¶ 21} Ohio employers are required to make contributions to Ohio's unemployment compensation fund. R.C. 4141.23. The statutory definition of "employer" includes limited liability companies that have "in employment at least one individual." R.C. 4141.01(A)(1)(a). Employment is defined as "service performed by an individual for remuneration under any contract of hire, written or oral, express or implied * * * unless it is shown to the satisfaction of the director that such individual has been and will continue to be free from direction or control over the performance of such service, both under a contract of service and in fact." R.C. 4141.01(B)(1). Consistent with the statutory definition of employment, Ohio Adm.Code 4141-3-05(A) provides:

> [A] worker is in employment when an "employer-employee"
> relationship exists between the worker and the person for

whom the individual performs services and the director determines that:

(1)  The person for whom services are performed has the right to direct or control the performance of such services; and

(2)  Remuneration is received by the worker for services performed.

{¶ 22} Ohio Adm.Code 4141-3-05(B) provides 20 factors derived from the common law to consider "[a]s an aid to determining whether there is sufficient direction or control present" when determining whether an employment relationship exists:

(1)  The worker is required to comply with the instructions of the person for whom services are being performed, regarding when, where, and how the worker is to perform the services;

(2)  The person for whom services are being performed requires particular training for the worker performing services;

(3)  The services provided are part of the regular business of the person for whom services are being performed;

(4)  The person for whom services are being performed requires that services be provided by a particular worker;

(5)  The person for whom services are being performed hires, supervises or pays the wages of the worker performing services;

(6)  A continuing relationship exists between the person for whom services are being performed and the worker performing services that contemplates continuing or recurring work, even if not full time;

(7)  The person for whom services are being performed requires set hours during which services are to be performed;

(8)  The person for whom services are being performed requires the worker to devote himself or herself full time to the business of the person for whom services are being performed;

(9)  The person for whom services are being performed requires that work be performed on its premises;

(10)   The person for whom services are being performed requires that the worker follow the order of work set by the person for whom services are being performed;

(11)   The person for whom services are being performed requires the worker to make oral or written progress reports;

(12)  The person for whom services are being performed pays the worker on a regular basis such as hourly, weekly or monthly;

(13)  The person for whom services are being performed pays expenses for the worker performing services;

(14)   The person for whom services are being performed furnishes tools, instrumentalities, and other materials for use by the worker in performing services;

(15)   There is a lack of investment by the worker in the facilities used to perform services;

(16)  There is a lack of profit or loss to the worker performing services as a result of the performance of such services;

(17)   The worker performing services is not performing services for a number of persons at the same time;

(18)   The worker performing services does not make such services available to the general public;

(19)  The person for whom services are being performed has a right to discharge the worker performing services;

(20)  The worker performing services has the right to end the relationship with the person for whom services are being performed without incurring liability pursuant to an employment contract or agreement.

These factors possess varying degrees of importance "depending on the occupation and the factual context in which the services are performed." Ohio Adm.Code 4141-3-05(B). Furthermore, the rule states that such factors are "designed only as guides for determining whether sufficient direction or control exists and must be considered in totality." Ohio Adm.Code 4141-3-05(B).

{¶ 23} "The alleged employer bears the burden of proving that the worker is not an employee and, thus, that it need not contribute to the unemployment compensation fund." *BRT* at ¶ 17, citing *Miracle* at ¶ 21.

## C. Analysis

{¶ 24} First, appellant asserts the common pleas court applied the wrong standard of review. Specifically, appellant states that "[a]n important issue in this case is the construction of a written contract, to wit, the [agreement], which is a question of law to be reviewed by the court de novo; also the law set forth in Section 4141-3-05 of the Ohio Administrative Code." (Appellant's Brief at 6.)

{¶ 25} Appellant's argument fails to appreciate the nature of a common pleas court's review in an appeal from a contribution determination under R.C. 4141.26. Here, the issue was not a contractual dispute involving purely legal review of the terms of the agreement; rather, the common pleas court was required to determine with regard to the totality of the record before it whether the commission's decision was supported by reliable, probative, and substantial evidence and in accordance with law. The contractual language at issue in the agreement between appellant and Pilla is merely one evidentiary component of the analysis of the key question at issue: the right and extent of control of the employer over the worker. R.C. 4141.01(B)(1); *Prime Kosher Foods, Inc. v. Admr., Bur. of Emp. Servs.*, 35 Ohio App.3d 121, 123-24 (10th Dist.1987) (finding contractual language not sufficient to sustain employer's burden of proving that worker was not an employee). Here, the court noted the importance of the 20 administrative code factors, stating that "[a]ll the factors must be reviewed and the evidence must be weighed in order to make a decision." (Decision at 4.) Ultimately, the common pleas court found, as required by R.C. 4141.26(D)(2), that the decision of the commission was "supported by reliable, probative, and substantial evidence" and was "in accordance with law." (Decision at 6.) Therefore, we find appellant's argument to be without merit.

{¶ 26} Next, appellant argues the common pleas court abused its discretion in finding the decision of the commission was supported by reliable, probative, and substantial evidence and was in accordance with law. Here, the record reflects some evidence supporting a finding that appellant was an employer under Ohio unemployment

compensation law, whereas other evidence was indicative of an independent contractor relationship.

{¶ 27} Importantly, the record reflects appellant possessed a great deal of control over the prices for Pilla's services and the amounts it charged for expenses. Pilla did not negotiate to set the prices for his services under the agreement; nor did Pilla have any control over the standard prices for his services in practice. Furthermore, Pilla did not negotiate for or have control over the portion of money derived from his services that appellant retained to pay for rent, utilities, supplies, promotion, and other assorted expenses assessed by appellant against Pilla. Instead, Pilla performed services for clients at the amounts dictated by appellant and received on a bi-weekly basis from appellant his earnings from his services, with amounts for expenses already deducted, in addition to any tips he received from clients.

{¶ 28} Appellant argues Pilla agreed to perform his services at the rates specified by appellant. However, the agreement contained no terms setting the prices for Pilla's services or the cost of expenses incurred by appellant relating to Pilla's services. Nor does the record reflect that any separate document contained an agreement between Pilla and appellant for such prices.

{¶ 29} Among the other evidence in the record, Pilla was required to perform his services for appellant at appellant's facility, during the hours the facility was open. Testimony reflected Pilla did submit his own schedule to appellant; however, Pilla's availability was required to be in conformance with the hours of appellant's facility. Appellant provided Pilla with all the equipment and supplies he required to perform his services. However, appellant also charged Pilla for the provision of such equipment and supplies. Pilla testified he was required to provide a report or record of the services he provided to clients.

{¶ 30} Appellant required Pilla to obtain and pay for his own professional liability insurance; appellant required that Pilla's insurance also provide coverage for appellant. The parties had an open-ended agreement, as the agreement lacked a termination date, and Pilla testified it had never terminated. However, either party was able to terminate the agreement at any time without consequence. Pilla was not required under the agreement

to exclusively provide services as a licensed massage therapist for appellant, and did in fact provide similar services to another employer while working for appellant.

{¶ 31} Thus, some of the evidence in the record militates in support of the finding that appellant was an employer under Ohio unemployment compensation law, whereas other evidence tends to support a finding that Pilla was operating as an independent contractor. Indeed, this is a close case. However, whether or not, in weighing such facts, we would have reached the same conclusion as the commission is not the question before us. *Miracle* at ¶ 30 (stating that "on close questions—where the Commission might reasonably decide either way—courts have no authority to upset the Commission's decision"); *Evans v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-743, 2015-Ohio-3842, ¶ 22. Instead, we conclude, on the facts of this case, based on the totality of the record, the common pleas court did not abuse its discretion in finding that the decision of the commission was supported by reliable, probative, and substantial evidence and was in accordance with law.

{¶ 32} Finally, appellant cites a federal court case and two prior administrative actions which it argues demonstrate that the common pleas court's decision was not in accordance with law. First, appellant cites *Ren-Lyn Corp v. United States*, 968 F.Supp. 363 (N.D.Ohio 1997). In *Ren-Lyn*, the court examined a question regarding unemployment contributions under the United States Internal Revenue Code and the Federal Unemployment Tax Acts. Unlike in *Ren-Lyn*, this matter involves a question of Ohio unemployment contribution law and associated administrative regulations; as a result, we find *Ren-Lyn* to be without precedential value to the present matter and decline to apply it.

{¶ 33} Second, appellant cites an administrative case, *In re Gallego*, Unemployment Compensation Board of Review case No. 650912-E-BR (June 5, 1986). As noted by the commission, *Gallego* was decided over five years before the promulgation of Ohio Adm.Code 4141-3-05.[1] Furthermore, *Gallego* involved facts and circumstances different from those in the present matter. Specifically, appellant notes the workers in *Gallego* fixed their own charges for their services. Here, as admitted by appellant, Pilla did not negotiate or otherwise set the prices for his services; rather, appellant fixed the prices for Pilla's

---

[1] We note Ohio Adm.Code 4141-3-05 became effective on December 30, 1991 and was subsequently amended three times, in 2001, 2006, and 2018.

services.  As a result, *Gallego* is of limited precedential value to the present matter and we decline to apply it.

{¶ 34}  Third, appellant points to a prior unemployment contribution administrative action involving "affiliates" of appellant which addressed the question of whether "tennis pros and personal trainers" were independent contractors under "similar independent contractor agreements."  (Appellant's Brief at 25.)  The commission and the common pleas court found that prior administrative action, which resulted in a settlement, lacked relevance to the instant matter.  Appellant does not contend the prior administrative action involved the same facts or parties.  Given the inherently fact-specific nature of inquiries in unemployment contribution cases under R.C. 4141.26, we agree with the commission and common pleas court that the prior administrative action is not dispositive in this case.  Therefore, we find appellant's arguments regarding the cited case and administrative actions to be without merit.

{¶ 35}  Accordingly, on the facts of this case as noted above, we overrule appellant's single assignment of error.

## IV.  Conclusion

{¶ 36}  Having overruled appellant's single assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and HORTON, JJ., concur.

———————————