[Cite as *Pokornowski v. Ohio State Racing Comm.*, 2019-Ohio-4264.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Christi Pokornowski, | : | |
| Appellant-Appellee, | : | |
| | | No. 18AP-318 |
| v. | : | (C.P.C. No. 17CV-4329) |
| Ohio State Racing Commission, | : | (REGULAR CALENDAR) |
| Appellee-Appellant. | : | |

D E C I S I O N

Rendered on October 17, 2019

**On brief:** *Graff & McGovern, LPA,* and *John A. Izzo*, for appellee. **Argued:** *John A. Izzo.*

**On brief:** *Dave Yost*, Attorney General, and *Charles E. Febus*, for appellant. **Argued:** *Charles E. Febus.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Appellant, Ohio State Racing Commission ("commission"), appeals the April 4, 2018 judgment of the Franklin County Court of Common Pleas, which reversed the commission's April 27, 2017 adjudication order finding appellee, Christi Pokornowski, violated the commission's rules and imposing penalties on her. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} This matter arises out of a horse race at the Dayton Raceway on October 24, 2015. On that day, "Sports Sinner," a horse trained by Pokornowski, finished first in the twelfth race, which resulted in a purse award of $12,000. Following the race, Sports Sinner was taken to the test barn where samples of urine and blood were collected to test for prohibited substances. On January 7, 2016, the Analytical Toxicology Laboratory of the

Ohio Department of Agriculture ("the lab") sent the commission a final test report, in which it found that Sport's Sinner's urine sample "was found to contain 3-Methoxytyramine" ("3-MT") at a "concentration exceed[ing] the regulatory threshold" for such substance.

{¶ 3}   On January 29, 2016, the Dayton Raceway judges issued a ruling against Pokornowski, finding her to be in violation of Ohio Adm.Code 3769-18-01(A)(2), (B)(1), (B)(13), (B)(16), (B)(17), 3769-18-02, 3769-18-99, and 3769-17-43.  The judges imposed on Pokornowski the following penalty: a fine of $1,000 and a 365-day suspension. Additionally, the judges ordered the prize money be returned and redistributed.  Finally, the judges recommended the commission subject Pokornowski to an additional $4,000 fine and 730-day suspension.  On February 4, 2016, Pokornowski appealed, requesting a hearing before a commission hearing officer.

{¶ 4}   Beginning on October 18, 2016, the commission hearing officer held a hearing.  Soobeng Tan, director of the lab, testified regarding the sample taken from Sports Sinner at the Dayton Raceway on October 24, 2015.  The initial screening of the sample showed a positive finding for 3-MT of approximately 11 micrograms per milliliter.  Tan testified the regulatory threshold amount of 3-MT was 4 micrograms per milliliter.  Tan concurred with the initial result and determined additional testing would be required.

{¶ 5}   On December 15, 2015, Tan performed a confirmatory analysis of the sample, finding a concentration of 3-MT in excess of the regulatory threshold.  On December 28, Tan repeated the confirmatory analysis of the sample, again finding it exceeded the regulatory threshold amount for 3-MT.  As provided in his final test report, Tan found the sample in question contained 3-MT at a concentration of 16 plus or minus 9 micrograms per milliliter.

{¶ 6}   Tan stated that the regulatory threshold of 4 micrograms per milliliter was in accordance with the guidelines established by the Association of Racing Commissioners International ("ARCI").  Tan stated that 3-MT was a naturally occurring substance in horses.  However, only 1 in 10,000 horses have a natural amount of 3-MT exceeding the regulatory threshold.  Tan agreed that 3-MT does not appear on the Ohio State Racing Commission Regulatory Thresholds for Prohibited Substances as referenced at the March 23, 2016 commission meeting.  It was Tan's understanding that 3-MT is not a foreign substance as provided under Ohio Adm.Code 3769-18-01(A)(2) until it exceeds the

regulatory threshold. Tan noted that Ohio Adm.Code 3769-18-01(A)(2) referred to the ARCI model rules and stated that consideration is to be given such rules. Tan was not aware of when the commission adopted the thresholds from the ARCI model rules.

{¶ 7} John Yinger, the presiding judge of Dayton Raceway, testified he received the final laboratory report from the lab, which he used to produce the January 29, 2016 ruling against Pokornowski. In finding Pokornowski to be in violation of the commission's rules, Yinger referred to the ARCI guidelines. Yinger did not think that he had been told to follow the ARCI guidelines. However, Yinger believed that ARCI set the regulatory thresholds.

{¶ 8} On January 18, 2017, the hearing officer issued a report and recommendation, recommending the January 29, 2016 ruling of the judges be affirmed, including all penalties. Pokornowski filed seven objections to the hearing officer's report and recommendation.

{¶ 9} On April 24, 2017, the commission held a meeting at which it voted to uphold the hearing officer's report and recommendation. On April 27, 2017, the director of the commission entered an adjudication order suspending Pokornowski's license from June 1, 2017 until May 31, 2020, issuing her a $5,000 fine, and ordering her to return the race purse awarded on October 24, 2015.

{¶ 10} On May 11, 2017, Pokornowski filed a notice of appeal pursuant to R.C. Chapter 119 with the common pleas court. On June 21, 2017, Pokornowski filed a motion seeking the court to enter judgment in her favor based on controlling precedent. On July 12, 2017, the commission filed a response to Pokornowski's June 21, 2017 motion. On July 17, 2017, Pokornowski filed a reply in support of her June 21, 2017 motion. On December 12, 2017, the common pleas court filed an order and entry denying Pokornowski's June 21, 2017 motion.

{¶ 11} On December 28, 2017, Pokornowski filed a motion for reconsideration of the court's December 12, 2017 order and entry. On January 23, 2018, the common pleas court denied Pokornowski's December 28, 2017 motion. On April 4, 2018, after having been fully briefed by the parties, the common pleas court filed a decision and entry concluding, pursuant to R.C. 119.12, that the commission's April 27, 2017 order was not supported by reliable, probative, and substantial evidence and was not in accordance with law.

## II. Assignment of Error

{¶ 12} The commission appeals and assigns the following single assignment of error for our review:

> The Ohio State Racing Commission's order was supported by reliable, probative and substantial evidence and was in accordance with law and the lower court erred in concluding otherwise.

## III. Discussion

{¶ 13} In its assignment of error, the commission asserts the common pleas court erred because the commission's April 27, 2017 adjudication order was supported by reliable, probative, and substantial evidence and was in accordance with law.

## A. Standard of Review

{¶ 14} R.C. Chapter 3769 governs horse racing in Ohio and establishes the commission and its attendant powers. R.C. 3769.03 provides that "[w]ith respect to the issuance, denial, suspension, or revocation of a license to a participant in horse racing, the action of the commission shall be subject to [R.C.] Chapter 119."

{¶ 15} In an administrative appeal under R.C. 119.12, a common pleas court "may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12(M). *See Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619 (1993). To be "reliable," evidence must be dependable and true within a reasonable probability. *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). *See also Rupert v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 17AP-173, 2017-Ohio-8377, ¶ 9. To be "probative," evidence must be relevant or, in other words, tend to prove the issue in question. *Id.* To be "substantial," evidence must have importance and value. *Id.* "[A]n administrative appeal to the common pleas court does not provide a trial de novo, but rather 'the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts.' " (Internal citations omitted.) *Capital Care Network of Toledo v. Ohio Dept. of Health*, 153 Ohio St.3d 362, 2018-Ohio-440, ¶ 25, quoting *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980).

{¶ 16} The standard of review for a court of appeals in an administrative appeal is even more limited. As to factual issues, we must determine whether the common pleas court abused its discretion. *Avalon Resort & Spa LLC v. State Unemp. Comp. Rev. Comm.*, 10th Dist. No. 18AP-212, 2018-Ohio-4294, ¶ 20, citing *Miracle Home Health Care, LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-318, 2012-Ohio-5669, ¶ 18. An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). However, when determining whether the agency's decision was in accordance with law, we exercise plenary review. *Avalon* at ¶ 20, citing *BNA Constr., Ltd. v. Dir. of Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 16AP-317, 2017-Ohio-7227, ¶ 25, citing *BRT Transp., LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-800, 2015-Ohio-2048, ¶ 15.

## B. Applicable Statutes and Administrative Code Provisions

{¶ 17} R.C. 3769.03 provides that the commission "shall prescribe the rules and conditions under which horse racing may be conducted and may issue, deny, suspend, diminish, or revoke permits to conduct horse racing." Pursuant to R.C. 3769.03, the commission has authority over licensing those persons engaged in racing, including the authority to "issue, deny, suspend, or revoke licenses to those persons engaged in racing and to those employees of permit holders as is in the public interest for the purpose of maintaining a proper control over horse-racing meetings."

{¶ 18} Ohio Adm.Code 3769-18-01(B) provides that "the intent of this rule" is "to protect the integrity of horse racing, guard the health of the horse, and safeguard the interest of the public and racing participants through the prohibition or control of drugs, medications and substances foreign to the natural horse." Ohio Adm.Code 3769-18-01(B)(1) provides that "no horse entered to race shall carry in its body on race day any prohibited foreign substance," subject to certain specified exceptions not relevant to the instant matter. Ohio Adm.Code 3769-18-01(A)(2) defines "foreign substances" as "all classified substances except those which exist naturally in the untreated horse at normal physiological concentrations and include all narcotics, stimulants, depressants or other drugs." Ohio Adm.Code 3769-18-01(A)(2) provides that "[t]he commission may, by order, establish a system of classification of prohibited foreign substances, to include methods of detection and/or regulatory thresholds thereof, recommended penalties and disciplinary

measures for the presence of said substances in test samples."   Furthermore, Ohio Adm.Code 3769-18-01(A)(2) states that "[i]n determining the substances to be so classified, the commission shall give due consideration to the uniform classification guidelines of foreign substances and recommended penalties and model rules as revised from time to time by the association of racing commissioners international inc." (Sic.)

{¶ 19} Ohio Adm.Code 3769-18-02(A) provides that "[t]he trainer shall be the absolute insurer of, and responsible for, the condition of the horse entered in a race" and that "[s]hould the chemical or other analysis of urine or blood specimens prove positive, showing the presence of any foreign substance not permitted by rule 3769-18-01 of the Administrative Code, the trainer of the horse * * * may, in the discretion of the commission, be subjected to penalties provided in paragraph (B) of this rule."  Ohio Adm.Code 3769-18-02(B) provides that "judges may fine any licensee who violates this rule an amount not in excess of one thousand dollars and/or suspend any commission license held by such licensee for a period not to exceed one year and/or refer the matter to the commission for its consideration."  *See* R.C. 3769.091. Pursuant to R.C. 3769.03, the commission "may impose, in addition to any other penalty imposed by the commission, fines in an amount not to exceed ten thousand dollars on any permit holder or any other person who violates the rules or orders of the commission."  *See* Ohio Adm.Code 3769-18-99.

## C. Application

{¶ 20} Here, the common pleas court found that "[b]ased on Mr. Tan's testimony, and when considering the entire record, there was no evidence to support the idea that the Commission established a threshold for 3-MT, or a 3-MT classification." (Apr. 4, 2018 Decision at 4.)  Furthermore, the court found that the commission "neither promulgated a rule nor issued an order establishing a standard for prohibited levels of 3-MT." (Apr. 4, 2018 Decision at 5.)  As a result, relying on *DelBianco v. Ohio State Racing Comm.*, 10th Dist. No. 01AP-395 (Oct. 16, 2001), the common pleas court concluded the commission's April 27, 2017 adjudication order was not in accordance with law.

{¶ 21} In *DelBianco,* we reviewed a commission order finding that a horse trained by DelBianco violated Ohio Adm.Code 3769-18-01(B)(1) and 3769-18-02(A) by having a

prohibited foreign substance, i.e., an abnormal level of total carbon dioxide ("tCO[2]").[1] We found the commission adopted a standard having a uniform and general operation with regard to prohibited tCO[2] levels in horses which was then enforced against DelBianco. However, such standard was not properly promulgated under the procedures set forth in R.C. Chapter 119 as required. Therefore, because DelBianco was "found in violation of a 'rule' that had not been properly promulgated," we concluded that the commission's "order was not in accordance with law and is, therefore, invalid." *Id.*

{¶ 22} Recently, in *Farina v. Ohio State Racing Comm.*, 10th Dist. No. 18AP-45, 2019-Ohio-3903, we reviewed a commission order finding Farina, a licensed horse trainer, had violated its rules by racing a horse with a prohibited concentration of 3-MT. In making our determination, we considered whether the commission established a standard governing prohibited 3-MT concentrations and, if so, whether such standard was properly promulgated in accordance with Ohio Adm.Code 3769-18-01(A)(2). Consistent with our precedent in *DelBianco*, we agreed with the common pleas court in finding the commission neither promulgated a rule nor issued an order establishing a standard with regard to prohibited levels of 3-MT. Therefore, "because Farina was found in violation of a standard that had not been established by a properly promulgated rule or properly adopted rule, and that there is no evidence in the record that the commission had issued an order adopting the ARCI guidelines as to 3-MT," we concluded the commission's order was not in accordance with law. *Farina* at ¶ 28.

{¶ 23} Here, the issue is identical to the one we reviewed in *Farina*. Ohio Adm.Code 3769-18-01(A)(2) provides that the commission "may, *by order*, establish a system of classification of prohibited foreign substances, to include methods of detection and/or regulatory thresholds thereof, recommended penalties and disciplinary measures for the presence of said substances in test samples." (Emphasis added.) However, as in *Farina*, there is no evidence in the record before us that the commission promulgated a rule or issued an order in accordance with Ohio Adm.Code 3769-18-01(A)(2) adopting the ARCI guidelines with regard to 3-MT.[2] As a result, consistent with our precedent in *DelBianco*

---

[1] We note that our decision in *DelBianco* considered a prior version of Ohio Adm.Code 3769-18-01 in effect at the time in question.

[2] We note the commission does not contend it promulgated a rule or issued an order incorporating the ARCI guidelines.

and *Farina*, we conclude the common pleas court did not err in determining that the commission's adjudication order was not in accordance with law.  Accordingly, we overrule the commission's assignment of error.

**IV. Conclusion**

{¶ 24}  Having overruled the commission's single assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., and LUPER SCHUSTER, J., concur.