**[Cite as *Lupton v. Ohio State Racing Comm.*, 2025-Ohio-4984.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Brevin Lupton, | : | |
| Appellant-Appellant/ Cross-Appellee, | : | No. 24AP-687 |
| | : | (C.P.C. No. 24CV-5153) |
| v. | : | (REGULAR CALENDAR) |
| Ohio State Racing Commission, | : | |
| Appellee-Appellee/ Cross-Appellant. | : | |

D E C I S I O N

Rendered on October 31, 2025

**On brief:** *Boggs Law*, *LLC*, and *Alison Boggs*; *Mancino Law, LLC*, and *Renee Mancino*, for Brevin Lupton. **Argued:** *Renee Mancino.*

**On brief:** *Dave Yost*, Attorney General, and *Todd K. Deboe*, for Ohio State Racing Commission. **Argued:** *Todd K. Deboe.*

APPEAL from the Franklin County Court of Common Pleas

DINGUS, J.

{¶ 1} Appellant/cross-appellee, Brevin Lupton, appeals from a judgment of the Franklin County Court of Common Pleas remanding this matter to appellee/cross-appellant, Ohio State Racing Commission ("the Racing Commission"), to conduct a new evidentiary hearing, including requiring the attendance and permitting the testimony of a subpoenaed witness. For the following reasons, we affirm in part, reverse in part, and remand.

## I. Facts and Procedural History

{¶ 2}  In 2023, the Racing Commission issued a groom license to Lupton.  On October 9, 2023, and while working with two others to break a horse harnessed to a jog cart at the Delaware County Fairgrounds, Lupton kicked that horse in the back of the neck after it fell and remained on the ground.  This incident was video recorded by a bystander and forwarded to the Racing Commission.  On October 19, 2023, the judges at the Hollywood Gaming Dayton Raceway issued ruling number 23-DAY-037, which suspended Lupton's groom license for one year and imposed a $1,000 fine for an act of cruelty against a horse and for conduct that was against the best interest of horse racing, in violation of Adm.Code 3769-2-26(A)(9) and (10).  On the same day, Lupton appealed the judges' ruling to the Racing Commission, which appointed a hearing officer to the matter.

{¶ 3}  Lupton filed a motion to dismiss the disciplinary action against him for lack of jurisdiction because no live racing was occurring at the Delaware County Fairgrounds at the time of the alleged violations.  He argued the Racing Commission's jurisdiction extends only to licensees for conduct that occurs during live racing.  Lupton subsequently supplemented his motion to dismiss, arguing that even if the Racing Commission had jurisdiction, it lost that jurisdiction because it failed to schedule the hearing within 15 days, as required under R.C. 119.07.  Conversely, the Racing Commission moved to quash a subpoena issued at Lupton's request to Michele Cardi of the Delaware County Humane Society, asserting that Cardi had no relevant information to provide.  On March 6, 2024, the hearing officer denied Lupton's motion to dismiss and granted the Racing Commission's motion to quash the subpoena.

{¶ 4}  On March 13, 2024, the hearing officer held an administrative hearing.  As pertinent to this appeal, the evidence presented at that hearing demonstrated the following. Dr. Margaret Mitchell, a veterinarian with experience in treating horses, testified that she reviewed the video of Lupton kicking the horse.  She described the kick as landing on "sort of the top of the neck close to the withers."  (Oct. 13, 2024 Tr. at 19.)  She testified that the kick was "[p]robably not acceptable, and to some extent not necessary, but they didn't have much choice, in my opinion, on this horse."  *Id*. at 20.  Dr. Mitchell found nothing wrong with the horse upon examining it within a few hours of the kick.  She opined that the one kick to the horse was not cruelty.

{¶ 5} Doug Thomas, the presiding judge at the Hollywood Gaming Dayton Raceway, testified that he watched the video and saw Lupton "come up and give the horse a nice kick in the back of the head or neck area." *Id.* at 45. He considered Lupton's action to have "no place" in horseracing as it violated the accepted standards of the industry, irrespective of whether the horse sustained any injury from the kick. *Id.* at 47. He and the other two judges found that Lupton had engaged in conduct that constituted cruelty to a horse and that was against the best interest of horse racing.

{¶ 6} Lupton testified that, on the day of the incident, he and two others had hooked the horse to a jog cart for the first time to "break" this horse. During this process, the horse "threw himself down a lot." *Id.* at 98. Lupton explained that, as to his kicking of the harnessed horse, he "went up and just tapped [the horse] with the side of [his] foot" because he was concerned for the horse's safety on the ground, as that circumstance was dangerous and unpredictable. *Id.* at 100. He was charged with a misdemeanor offense in Delaware County for his conduct, but those charges ultimately were dismissed with prejudice.

{¶ 7} The video of the incident was admitted into evidence. The video shows the horse, which was harnessed to a jog cart, rearing back and falling to the ground. Lupton then forcibly kicked the horse once in the back of the neck region. (Ex. A.) The horse's legs appear to jerk in response to the kick, but the horse remained on the ground immediately after the kick. The degree of force imposed by the kick and the characterization of the horse's response to that kick are subject to viewer interpretation.

{¶ 8} On May 15, 2024, the hearing officer issued his findings of fact, conclusions of law, and recommendation. The hearing officer concluded that Lupton's act of kicking the horse violated Adm.Code 3769-2-26(A)(9) and (10), which prohibit "cruelty to a horse," and conduct "against the best interest of horse racing." (May 15, 2024 Findings of Fact, Conclusions of Law & Recommendation at 12.) For these violations, the hearing officer recommended the Racing Commission suspend Lupton's groom license for one year and fine him $1,000. Lupton filed objections to the hearing officer's report and recommendation, and the matter was considered by the Racing Commission. The Racing Commission adopted the hearing officer's report and recommendation, except it voted to increase the imposed fine to $5,000. Thus, the Racing Commission entered an

adjudication order suspending Lupton's groom license for one year and fining him $5,000 for engaging in an act of cruelty to a horse and for conduct not in the best interest of horse racing. Pursuant to R.C. Chapter 119, Lupton appealed to the trial court.

{¶ 9} On November 6, 2024, the trial court filed a decision and entry reversing the Racing Commission's order. The trial court found the Racing Commission hearing officer erred in defining "cruelty to a horse" for the purpose of the rule at issue and in granting the Racing Commission's motion to quash, and it remanded the matter to the Racing Commission to conduct a new evidentiary hearing, including requiring the attendance and permitting the testimony of Cardi, the witness subpoenaed at Lupton's request.

{¶ 10} Lupton appeals, and the Racing Commission cross-appeals.

## II. Assignments of Error

{¶ 11} Lupton assigns the following three assignments of error for our review:

> [I.] The trial court erred in affirming the Ohio State Racing Commission's ultra vires expansion of its jurisdiction beyond the statutory limitations set forth in Ohio Revised Code § 3769.03, contrary to the controlling precedent and fundamental administrative law principals requiring explicit legislative authorization for agency action.

> [II.] The trial court erred in holding that the Ohio State Racing Commission is not bound by the mandatory hearing deadline set forth in Ohio Revised Code Section 119.07, despite binding precedent requiring strict adherence to procedural safeguards in administrative adjudications, and further erred by failing to recognize that the Commission's actions violated Appellant's due process rights under the Ohio and U.S. Constitutions.

> [III.] The trial court erred in upholding the Ohio State Racing Commission's arbitrary and capricious enforcement of an undefined standard for "cruelty to a horse", violating fundamental due process protections, the requirement that administrative penalties be supported by reliable, probative, and substantial evidence under Ohio Revised Code § 119.12, and binding precedent prohibiting agencies from imposing vague, inconsistent, and discriminatory penalties.

{¶ 12} The Racing Commission assigns the following five cross-assignments of error for our review:

> I. The trial court erred when it found that the hearing officer failed to weigh all conflicting evidence.

II. The trial court erred when it found that the testimony of a humane society employee was crucial in determining whether the kick constituted cruelty.

III. The trial court erred when it found that the hearing officer failed to apply the appropriate legal definition of cruelty.

IV. The trial court erred when it found that the hearing officer shifted the burden of proof.

V. The trial court erred when it failed to give the Commission the appropriate amount of deference.

## III. Standard of Review

{¶ 13} R.C. Chapter 3769 governs horse racing in Ohio and establishes the Racing Commission and its attendant powers. As applicable to this matter, R.C. 3769.03 provided that "[w]ith respect to the issuance, denial, suspension, or revocation of a license to a participant in horse racing, the action of the commission shall be subject to [R.C.] Chapter 119."[1]

{¶ 14} In reviewing an order of an administrative agency under R.C. 119.12, a common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110 (1980). "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. "Substantial" evidence is evidence with some weight; it must have importance and value. *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 15} The common pleas court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist. 1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). On questions of law, the common pleas court conducts a de novo review, exercising

---

[1] Effective April 9, 2025, this language was removed from R.C. 3769.03 and, with a non-substantive slight change in wording, included in newly enacted R.C. 3769.031(C)(4).

its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 470 (1993), quoting R.C. 119.12. As to questions of fact, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. The common pleas court usually is "confined to the record as certified to it by the agency" and to "newly discovered" evidence that could not reasonably have been adduced before the agency. R.C. 119.12(L).

{¶ 16} An appellate court's review of an administrative decision is more limited. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619 (1993). While the common pleas court must examine the evidence, "[s]uch is not the charge of the appellate court." *Bd. of Edn. of the Rossford Exempted Village School Dist. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.*; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218 (1983). An appellate court reviews de novo purely legal questions. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 2003-Ohio-418, ¶ 15 (10th Dist.).

## IV. Discussion

{¶ 17} Lupton's first assignment of error alleges the Racing Commission acted beyond its jurisdiction in sanctioning him. He argues the Racing Commission's jurisdiction to regulate horse racing is limited to conduct occurring on racetrack property during live racing under a valid permit. We disagree.

{¶ 18} The Racing Commission is vested with "extraordinarily broad regulatory powers" over horse racing. *O'Daniel v. Ohio State Racing Comm.*, 37 Ohio St.2d 87, 93 (1974). Such authority is necessary because " '[t]he very nature of horse racing itself presents numerous opportunities for abuse. Specific and strict rules are necessary in order to preserve the integrity of the sport. Persons who wish to receive licenses to participate in the sport must conform to certain standards, rules and regulations, which are designed to maintain the integrity of horse racing.' " *Burneson v. Ohio State Racing Comm.*, 2004-Ohio-3313, ¶ 38 (10th Dist.), quoting *Haehn v. Ohio State Racing Comm.*, 83 Ohio App.3d 208, 213 (10th Dist. 1992). "Horse racing and legalized wagering thereon, are subjects with respect to which police regulations for the protection of the public safety, morals, and

general welfare, are not only proper but are an absolute necessity." (Quotation marks deleted and citation omitted.) *Thomas v. Ohio State Racing Comm.*, 2009-Ohio-1559, ¶ 16 (10th Dist.).

{¶ 19} Pursuant to R.C. 3769.03, "[t]he state racing commission shall prescribe the rules and conditions under which horse racing may be conducted and may issue, deny, suspend, diminish, or revoke permits to conduct horse racing as authorized by sections 3769.01 to 3769.14 of the Revised Code." To this end, the Racing Commission has promulgated the rules at issue here, Adm.Code 3769-2-26(A)(9) and (10). These rules state the Racing Commission may take action against any license if the licensee "has abandoned, mistreated, abused, neglected, or engaged in an act of cruelty to a horse," Adm.Code 3769-2-26(A)(9), or "has engaged in conduct which is against the best interest of horse racing." Adm.Code 3769-2-26(A)(10).

{¶ 20} Lupton's conduct at issue occurred at the Delaware County Fairgrounds, on October 9, 2023, a date without any live racing at that location. According to Lupton, his conduct under these circumstances was not within the regulatory authority of the Racing Commission. But this court has held that licensee conduct that is reasonably related to horse racing is subject to the broad regulatory authority of the Racing Commission. *Hooser v. Ohio State Racing Comm.*, 2013-Ohio-4888, ¶ 30 (10th Dist.). Neither the enabling statute, nor the applicable Racing Commission rules, contain any geographic limitation on its regulation of licensee conduct relating to horse racing. This clearly means the Racing Commission has authority to regulate a licensee's horse-racing-related conduct even if it does not occur during live racing. Lupton, a licensee, kicked a horse when he and others were in the process of "breaking" this horse to a harness and jog cart for the first time. There is no dispute that Lupton's act of kicking this horse during training was reasonably related to horse racing. As such, it was subject to regulation by the Racing Commission.

{¶ 21} Accordingly, we overrule Lupton's first assignment of error.

{¶ 22} In his second assignment of error, Lupton asserts the trial court erred in finding that the Racing Commission is not bound to comply with the 15-day requirement set forth in R.C. 119.07. He argues that because the hearing was not scheduled within 15 days of his appeal, any Racing Commission order issued thereafter was invalidly entered for lack of jurisdiction. This assignment of error is not well-taken.

{¶ 23} R.C. 119.07 states: "Whenever a party requests a hearing in accordance with this section and section 119.06 of the Revised Code, the agency shall immediately set the date, time, and place for the hearing and serve the party with notice of the hearing. The date set for the hearing shall be within fifteen days, but not earlier than seven days, after the party has requested a hearing, unless otherwise agreed to by both the agency and the party." This statute also states: "The failure of an agency to serve the notices for any hearing required by sections 119.01 to 119.13 of the Revised Code in the manner provided in section 119.05 of the Revised Code shall invalidate any order entered pursuant to the hearing." R.C. 119.07.

{¶ 24} Here, the Racing Commission did not schedule the hearing within 15 days of Lupton's request for a hearing as required by R.C. 119.07. Lupton submitted his appeal from the judges' ruling on October 19, 2023, but the Racing Commission mailed its notice to him in January 2024, indicating that the matter was set for a hearing on February 1, 2024. Lupton asserts the Racing Commission's non-compliance with this 15-day requirement voids or otherwise invalidates its order because this failure divests the Racing Commission of jurisdiction. We are unpersuaded. First, Lupton does not allege that notice of the hearing was not served in the manner provided in R.C. 119.05. Therefore, R.C. 119.07's language quoted above expressly mandating the invalidation of an order for failure to comply with R.C. 119.05 does not apply. Second, this court recently addressed and flatly rejected an appellant's "faulty premise that [an administrative agency] is divested of jurisdiction if a hearing is not scheduled or held within the time required by R.C. 119.07." *Watkins v. Ohio Bd. of Edn.*, 2023-Ohio-2595, ¶ 29 (10th Dist.). Thus, even though the Racing Commission did not comply with R.C. 119.07's 15-day requirement, this did not divest the Racing Commission of its jurisdiction over the matter.

{¶ 25} Therefore, we overrule Lupton's second assignment of error.

{¶ 26} We next address Lupton's third assignment of error and the Racing Commission's third cross-assignment of error. These two assignments of error concern the definition of "cruelty to a horse," for the purpose of Adm.Code 3769-2-26(A)(9). Lupton's third assignment of error contends the trial court erred in allowing the Racing Commission to apply an undefined standard prohibiting "cruelty to a horse," and that the Racing Commission's findings were not supported by reliable, probative, and substantial evidence.

And the Racing Commission's third cross-assignment of error asserts the trial court erred in finding the hearing officer failed to apply the correct legal definition of "cruelty."

{¶ 27} We reject Lupton's arguments that the phrase "cruelty to a horse" as used in Adm.Code 3769-2-26(A)(9) lacks a definitional standard that provides adequate notice of what conduct is prohibited by the rule, and that no evidence was presented that would support a violation finding. Additionally, while we disagree with the Racing Commission's contention that the trial court erred in finding the hearing officer failed to apply the correct definition of "cruelty," we find the trial court also failed to set forth the correct definition of this word in its decision.

{¶ 28} Pursuant to R.C. 1.42, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." "In giving words their common, everyday meaning, it is common for a court to rely on dictionary definitions." (Quotation marks deleted and citations omitted.) *Hubay v. Ohio Elections Comm.*, 2023-Ohio-4801, ¶ 12 (10th Dist.). However, "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." R.C. 1.42. R.C. 1717.01(B) states that "in every law relating to animals," " 'cruelty' . . . include[s] every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief." Thus, "cruelty," for the purpose of Adm.Code 3769-2-26(A)(9), is not undefined; it has a specific meaning that the Racing Commission must apply.

{¶ 29} Instead of applying this statutory definition, the Racing Commission hearing officer noted that the term "cruelty" is not defined in Adm.Code Chapter 3769-12 and that the racetrack judges concluded Lupton's kick to the horse's neck was animal cruelty. The hearing officer deferred to the judgment of the racetrack judges' assessment of the matter, stating, "These judges are experienced horse people who are trusted by the Commission and the State of Ohio to interpret and enforce the laws and rules that protect the integrity of horse racing and the health and safety of the racing horses." (Findings of Fact, Conclusions of Law & Recommendation at 12.) The hearing officer then found "insufficient evidence to rebut the Judges' decision that [Lupton's] kick was animal cruelty." *Id.* Based on this reasoning, the hearing officer concluded the Racing Commission "proved by a

preponderance of the evidence that [Lupton] violated Ohio Admin. Code 3769-[]2-26 (A)(9)." *Id.*

{¶ 30} In reviewing the Racing Commission's order, the trial court found the hearing officer improperly deferred to the judgment of the racetrack judges in determining whether Lupton's conduct constituted "cruelty to a horse." We agree. At the hearing, the video of the incident was admitted into evidence. Presiding Judge Thomas testified that, upon reviewing the video, he and the other racetrack judges determined that Lupton's conduct violated accepted standards of the horse racing industry, and that this act was cruelty to the horse. Conversely, Lupton testified that he kicked the horse to get it off the ground to prevent injury. And the veterinarian, Dr. Mitchell, who examined the horse after the kick, testified equivocally that, while the kick was "probably not acceptable," Lupton may have had no other choice of action at that moment to deal with the dangerous situation of a harnessed horse on the ground. The primary issue before the Racing Commission was, considering the conflicting evidence and the video of the act itself, whether Lupton's conduct of kicking the horse was "cruelty to the horse" under the definition set forth in R.C. 1717.01(B). Even so, we agree with the trial court's finding that, in addressing this issue, the hearing officer's decision did not set forth any definition of "cruelty to a horse" to apply, and that, as a result, the Racing Commission essentially deferred to the racetrack judges to define and apply that term.

{¶ 31} The trial court, however, erred in its remand instructions regarding the term "cruelty." The trial court, in addition to citing the definition of cruelty in R.C. 1717.01(B), cited a dictionary definition of the word, and found the Racing Commission should have determined if the kick "fits any of these definitions of cruelty." (Nov. 6, 2024 Order & Entry Remanding the Case to the Ohio State Racing Commission at 11.) The trial court erred in ordering the Racing Commission to look beyond the statutorily defined meaning of cruelty for the purpose of determining any violation of Adm.Code 3769-2-26(A)(9). That is, "cruelty," for the purpose of this rule, has a specific meaning, and on remand, the Racing Commission must apply that meaning to determine whether Lupton violated the rule. Therefore, we find the trial court identified the incorrect standard for determining whether Lupton's act constituted "cruelty to a horse."

{¶ 32} For these reasons, Lupton's third assignment of error, and the Racing Commission's third cross-assignment of error, are sustained in part and overruled in part.

{¶ 33} Next, we address the Racing Commission's second cross-assignment of error, which alleges the trial court erred in reversing the hearing officer's decision to quash the subpoena issued to Michele Cardi. This assignment of error lacks merit.

{¶ 34} "Pursuant to R.C. 119.09, if requested by a party to the adjudicatory hearing, an administrative agency must issue a subpoena to compel the attendance of a witness." *Walters v. Ohio State Dept. of Adm. Servs.*, 2006-Ohio-6739, ¶ 29 (10th Dist.); *see* R.C. 119.09 (the agency "upon the request of any party receiving notice of the hearing as required by section 119.07 of the Revised Code shall[] issue a subpoena for any witness"). Subpoenas "shall be served and returned in the same manner as a subpoena in a criminal case," and the state is obligated to pay for the service of subpoenas and the fees for witnesses, including travel expenses. R.C. 119.09. The Supreme Court of Ohio has held that "a hearing examiner has the discretion to limit or quash subpoenas requested during adjudication hearings for the purpose of conducting a fair and efficient hearing." *Clayton v. Ohio Bd. of Nursing*, 2016-Ohio-643, ¶ 36. Consequently, a hearing examiner's decision to quash a subpoena is reviewed for an abuse of discretion. *See id.* at ¶ 37 (the question is whether the hearing examiner's decision to limit or quash a subpoena "was so arbitrary that it constituted an abuse of discretion or denied [the licensee] [their] due-process right to the opportunity to be heard in a meaningful manner").

{¶ 35} On February 23, 2024, the Racing Commission filed a motion to quash Lupton's subpoena issued to Cardi, the Humane Agent of the Humane Society of Delaware County. In support, the Racing Commission submitted a copy of an email from Cardi to the Racing Commission requesting that neither she, nor anyone else at the Humane Society of Delaware County, be required to participate at the hearing concerning Lupton's appeal. In the email, Cardi explained that, although she was contacted by the sheriff's office for her opinion about the matter, she "cannot offer any insight into these allegations as" she did not investigate the matter, review any veterinary reports, or personally examine the animal. (Mot. to Quash; *see* attached email at 1.) She also indicated that, as of March 1, 2024, she would be ending her 10-year employment with the Humane Society of Delaware County, and she was moving to Charlotte, North Carolina. In opposition to the motion to quash,

Lupton argued Cardi's testimony was necessary because she is trained to recognize animal cruelty. To demonstrate the relevance of Cardi's testimony, Lupton also submitted a copy of the Delaware County Sheriff's field case report. This report indicates that the investigating deputy sheriff reached out to Cardi regarding the matter, and, upon her review of the incident video, she did not recommend criminal charges. On March 6, 2024, the hearing officer quashed the subpoena based on his conclusion that Cardi's testimony relating to the decision to charge Lupton with a criminal offense would have no probative value to the issues presented in the administrative proceeding.

{¶ 36} After the conclusion of the hearing before the hearing officer, Lupton proffered the testimony of Cardi. According to Lupton's counsel:

> Had Michelle Car[di] been permitted to testify, she would have testified to two things: one, as the trained humane agent for Delaware County, while she did not see the horse directly, she viewed the video and she did not feel that there was cruelty to the horse. She also would have testified to the fact that she herself is a horsewoman in another discipline, and that it is her experience, when a horse goes down, it is imperative to get the horse back on its feet as quickly as possible, especially under a situation where they're fully harnessed and their movements can be impeded.
>
> So, she would have testified that in her opinion, watching the video, the actions taken by Mr. Lupton and Mr. Brown, were not unrealistic or unheard of in the horse industry.

(Tr. at 142.) The Racing Commission argues this proffer was inconsistent with Cardi's email, wherein Cardi indicated she had nothing relevant to add to the hearing.

{¶ 37} As to the hearing officer's decision to quash the subpoena issued to Cardi, the trial court concluded that the hearing officer erroneously believed that Cardi's testimony only would be relevant as to "the dismissal or the appropriateness of filing the criminal charge." (Order & Entry Remanding the Case to the Ohio State Racing Commission at 3.) We agree. While Cardi's opinion regarding whether criminal charges should have been filed was not directly probative of whether Lupton engaged in misconduct in violation of Racing Commission rules, the deputy sheriff's consultation with her as part of the criminal investigation reasonably indicates that she may possess specialized knowledge regarding the treatment of animals, particularly racehorses, based on her ten years of work experience

at the Humane Society of Delaware County. And while Cardi may not have personally examined the kicked horse or any related veterinary reports, she apparently had reviewed the video of the kick and could review it again at the hearing if needed. Thus, considering Cardi's specialized knowledge regarding the treatment of racehorses, it was unreasonable for the hearing officer to conclude that Cardi's testimony would be irrelevant to the issues before the Racing Commission. Pursuant to R.C. 119.09, Lupton was entitled to have her testify at the hearing. Consequently, we conclude the trial court did not err in finding the hearing officer abused his discretion in granting the Racing Commission's motion to quash the subpoena issued to Cardi, a witness whose testimony would be relevant to material issues concerning Lupton's alleged violation of both Adm.Code 3769-2-26(A)(9) and (10).

{¶ 38} Accordingly, we overrule the Racing Commission's second cross-assignment of error.

{¶ 39} Lastly, we address the Racing Commission's first, fourth, and fifth cross-assignments of error. In its first cross-assignment of error, the Racing Commission argues the trial court erred in finding the hearing officer failed to weigh all conflicting evidence. The Racing Commission's fourth cross-assignment of error asserts the trial court erred in finding the hearing officer shifted the burden of proof. And the Racing Commission's fifth cross-assignment of error asserts the trial court erred in not giving the Racing Commission proper deference in its violation findings. Because this matter must be remanded to the Racing Commission for a new evidentiary hearing, we find these three assignments of error are moot. *State v. Gideon*, 2020-Ohio-6961, ¶ 26 ("[A]n assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court.").

## V. Disposition

{¶ 40} Having sustained in part, and overruled in part, Lupton's third assignment of error and the Racing Commission's third cross-assignment of error, overruled Lupton's first and second assignments of error and the Racing Commission's second cross-assignment of error, and found as moot the Racing Commission's first, fourth, and fifth cross-assignments of error, we affirm in part, and reverse in part, the judgment of the Franklin County Court of Common Pleas. Accordingly, this matter is remanded to the trial

court for further remand to the Racing Commission for a new evidentiary hearing on Lupton's alleged violations consistent with law and this decision.

*Judgment affirmed in part and reversed in part*; *cause remanded.*

EDELSTEIN and LELAND, JJ., concur.

———————————