[Cite as *Farina v. Ohio State Racing Comm.*, 2019-Ohio-3903.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Anthony Farina, | : | |
| Appellant-Appellee, | : | |
| | | No. 18AP-45 |
| v. | : | (C.P.C. No. 17CV-4343) |
| Ohio State Racing Commission, | : | (REGULAR CALENDAR) |
| Appellee-Appellant. | : | |

D E C I S I O N

Rendered on September 26, 2019

**On brief:** *Graff & McGovern, LPA and John A. Izzo*, for appellee. **Argued:** *John A. Izzo.*

**On brief:** [*Dave Yost*], Attorney General, and *Charles E. Febus,* for appellant. **Argued:** *Charles E. Febus.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Appellee-appellant, Ohio State Racing Commission ("commission"), appeals the judgment of the Franklin County Court of Common Pleas entered on December 26, 2017, in a state administrative appeal under R.C. Chapter 119 reversing the commission's finding that appellant-appellee, Anthony Farina, violated the commission's racing rules. Because we find the common pleas court did not err in reversing the commission's order, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} Farina, a licensed horse trainer, filed an administrative appeal under Chapter 119 of the Revised Code with the Franklin County Court of Common Pleas on May 11, 2017. He appealed a commission order sanctioning him after a racehorse he trained tested positive for a purported prohibited substance after winning a race, arguing that the order was not supported by reliable, probative, and substantial evidence and was not in

accordance with law. The common pleas court reversed, finding that the commission's order was not in accordance with law. The commission timely appealed the common pleas court's judgment to this Court.

{¶ 3} The relevant facts follow. On January 9, 2016, the Farina-trained horse "Pita" finished first in the third race at Northfield Park with a race purse of $6,000, of which $3,000 was awarded to the first place finisher. After the race, Pita's blood and urine were collected for testing. On February 11, 2016, the Ohio Department of Agriculture's Analytical Toxicology Laboratory ("OATL") issued a final test report that Pita's urine sample "was found to contain a prohibited substance." (Sept. 5, 2017 Record of Proceedings at 00284.) The report included the following language concerning the laboratory findings:

> Certificate of Analysis:
>
> Urine sample # 822627 collected at Northfield Park on January 9, 2016 was received at the laboratory on January 11, 2016 and subjected to preliminary analysis. The results of this sample seemed to show the suspected presence of 3-methoxytyramine, with an apparent concentration in excess of its regulatory threshold. Consequently, we reported to you on January 20, 2016 that sample # 822627 was being held for additional testing.
>
> We have completed the additional testing. Urine sample # 822627 was found to contain 3-methoxytyramine at a concentration of 20 ± 4 micrograms per milliliter of urine. This concentration exceeds the regulatory threshold of 4 micrograms per milliliter of urine for 3-methoxytyramine. We are therefore, reporting urine sample # 822627 as *"FAILED"* on the accompanying report.

(Emphasis sic.) *Id.*

{¶ 4} It is undisputed that 3-methoxytyramine ("3-MT") is a naturally occurring substance in horses. It is also undisputed that the commission does not consider 3-MT a prohibited substance until it is present at a level in excess of the alleged regulatory threshold of four micrograms per milliliter of urine.

{¶ 5} The judges at Northfield Park conducted a hearing on Farina's purported violation. On February 20, 2016, the judges issued a ruling that, based on Pita's test results, Farina had violated certain rules of the racing commission, specifically Rules 3769-18-

01(A)(2)[1], 3769-18-01(B)(1)[2], 3769-18-01(B)(13)[3], 3769-18-01(B)(16)[4], 3769-18-01(B)(17)[5], 3769-18-02[6], 3769-18-99[7], and 3769-17-43[8]. The judges imposed a fine of $1,000 and suspended Farina's license for 365 days, the maximum penalty they were allowed to impose by law, disqualified Pita, and ordered the return of the first place purse money. The judges also recommended that Farina receive an additional $1,500 fine. The judges referred their ruling to the commission for further action on the recommended additional fine.

{¶ 6} Farina timely appealed the ruling of the Northfield Park judges to the commission.

{¶ 7} The commission's hearing officer conducted administrative hearings on September 29 and October 13, 2016. Witnesses testifying at the hearings included Soobeng Tan, director of OATL; Dr. Asim Mahmood, a commission veterinarian; and Ryan Ratliff and Lester Teeters, two of the three Northfield Park judges who issued the order sanctioning Farina. Farina submitted a written statement in lieu of testifying. Farina's legal counsel was present for both days of hearings.

{¶ 8} Tan testified that "3-MT per se is not a prohibited substance until it exhibits a certain threshold which had been adopted internationally as well as in the United States." (Record of Proceedings at 00956.) He testified further that the commission had adopted a threshold of 4 micrograms per milliliter of urine for 3-MT, based on the uniform classification guidelines of the Association of Racing Commissioners International ("ARCI"). Tan testified that Pita's test results indicated the presence of 3-MT at 20.2 micrograms per milliliter of urine. He stated that he does not know if the commission

---

[1] Ohio Adm.Code 3769-18-01(A)(2) defines the term "foreign substances" and sets forth the processes by which the commission establishes a system of classification of prohibited foreign substances, including methods of detection, recommended penalties and disciplinary measures.

[2] Ohio Adm.Code 3769-18-01(B)(1) provides that no horse entered to race shall carry in its body any prohibited foreign substance, subject to certain exceptions, on race day.

[3] Ohio Adm.Code 3769-18-01(B)(13) provides that a horse whose tests results are in violation of the rules shall be disqualified, and any licensee found in violation is subject to penalties contained in Ohio Adm.Code 3769-18-01(B)(15).

[4] Ohio Adm.Code 3769-18-01(B)(16) provides for sanctions to be imposed for violations, including disqualification of the horse and penalties imposed by the judges.

[5] Ohio Adm.Code 3769-18-01(B)(17) sets forth factors the judges and the commission may consider when imposing penalties.

[6] Ohio Adm.Code 3769-18-02 provides that the trainer is responsible for the condition of the horse entered in a race.

[7] Ohio Adm.Code 3769-18-99 sets forth penalties the commission may impose.

[8] Ohio Adm.Code 3769-17-43 provides for redistribution of the race purse following the disqualification of any horse or horses for violation of the rules.

issued an order establishing a level at which 3-MT is prohibited. Tan also stated that he has not seen any documents that notify horsemen that their horses' 3-MT levels were being tested. On cross-examination, Tan testified that the commission had adopted ARCI's uniform classification guidelines through Ohio Adm.Code 3769-18-01(A)(2). Tan acknowledged that 3-MT is not on the commission's prohibited substances chart, which is posted on the commission's website.

{¶ 9} Ratliff, an associate judge at Northfield Park, testified that he believed 3-MT was a foreign substance that did not occur naturally in a horse. Ratliff stated the penalty the Northfield Park judges imposed on Farina was based on ARCI guidelines. Ratliff was unable to explain how Farina's conduct constituted violations of all of the rules listed in the order issued by the Northfield Park judges, but he testified that all three of the judges agreed with the ruling against Farina.

{¶ 10} Teeters, the presiding judge at Northfield Park, testified that laboratory reports are prima facie evidence that the trainer had given the horse a substance. He testified further that, because the trainer is responsible for the horse, the trainer "pretty much [is] considered guilty in the State of Ohio." (Record of Proceedings at 01075.) Teeters stated he had not seen a positive result for 3-MT prior at Northfield Park before receiving the laboratory report of Pita's test results. Like Ratliff, Teeters thought 3-MT was a foreign substance that does not appear in a horse naturally. Teeters testified that, absent mitigating circumstances, the judges issue a penalty consistent with ARCI guidelines, "[s]o we pretty much know what the penalty is and will have discussed that before we even have a hearing." (Record of Proceedings at 01077-78.) Teeters testified that the judges had been using ARCI guidelines for quite a while, consistent with the last sentence of Ohio Adm.Code 3769-18-01(A)(2), and that the commission's executive director had told him to follow the ARCI guidelines. He testified that, because ARCI guidelines provide for a more severe penalty than the Northfield Park judges could legally impose, the judges recommended Farina's matter be referred to the commission for further action on a more severe penalty. Teeters testified that the Northfield Park judges listed all of Farina's violations in their order but, like Ratliff, he was unable to explain how Farina had violated all of the rules listed.

{¶ 11} On December 30, 2016, the commission hearing officer issued a report and recommendation, including findings of fact and conclusions of law. The hearing officer

recommended that the commission affirm the ruling of the Northfield Park judges that Farina be fined $2,500, and that Farina be ordered to return the first place purse money.

{¶ 12} On March 23, 2017, Farina was given written notice that the hearing officer's report and recommendation would be presented at the commission's April 24, 2017 meeting. Farina's counsel addressed the commission at the April 24, 2017 meeting regarding Farina's appeal. After consideration of the evidence presented, the commission voted unanimously to accept the hearing officer's report and recommendation. On April 27, 2017, the commission issued an adjudication order directing that Farina's license be suspended from June 1, 2017 through May 31, 2018, that he be fined $2,500, and that he return the race purse received as the winner of the race at issue.

{¶ 13} Farina filed an administrative appeal to the Franklin County Court of Common Pleas under R.C. Chapter 119. Farina's notice of appeal set forth the grounds for the appeal as follows:

> I. The Order of the Department should be reversed on the basis that the Order is not supported by reliable, probative and substantial evidence and is not in accordance with law;
>
> II. Rule 3769-18-01 is vague and unconstitutional when applied to the administration of endogenous substances that have a normal physiological value. *See DelBianco v. Ohio State Racing Commission*, Franklin Co. C.P. No. 00CV7050 (2001).
>
> III. The Commission failed to comply with R.C. 121.71 through R.C. 121.76 in regards to incorporation by reference.
>
> IV. The Commission does not have the authority to pursue a disciplinary action against a trainer whose horse has 3-methoxytyramine at a concentration in excess of four micrograms per milliliter of urine.
>
> V. The Department did not properly apply the law to the facts as presented.
>
> VI. The summary of testimony compiled by the hearing examiner is incomplete and at times inaccurate.

(May 11, 2017 Notice of Appeal at 1-2.)

{¶ 14} On December 26, 2017, the common pleas court issued a decision and judgment entry reversing the commission's order. The common pleas court acknowledged that the provisions of R.C. 119.12 and the holding of *Univ. of Cincinnati v. Conrad*, 63 Ohio

St.2d 108, 111 (1980), required that the commission's order be affirmed if it was supported by reliable, probative, and substantial evidence and was in accordance with law.

{¶ 15} The common pleas court, having thoroughly reviewed the record before it, found that the commission had neither promulgated a rule nor issued an order establishing a standard with regard to prohibited levels of 3-MT. The common pleas court found similarities between the facts of the instant matter and those considered by this Court in *DelBianco v. Ohio State Racing Comm.*, 10th Dist. No. 01AP-395, 2001 Ohio App. LEXIS 4626, (Oct. 16, 2001), which also involved a trainer who challenged the commission's finding that he had violated its racing rules based on certain thresholds that the commission had adopted without promulgating any rule.

{¶ 16} Relying on this Court's holding in *DelBianco*, the common pleas court concluded that the commission's order sanctioning Farina was not in accordance with law because the commission had not established a regulatory standard as to the threshold amount of 3-MT that would constitute a violation of the commission's racing rules. The common pleas court stated in part in its decision:

> The Commission's Order found Mr. Farina in violation of Ohio Admin. Code 3769-18-01(B)(1) and 3769-18-02. (Report and Recommendation, p. 27). Ohio Admin. Code 3769-18-01(B)(1) provides that "no horse entered to race shall carry in its body on race day any prohibited foreign substance." Ohio Admin. Code 3769-18-02 provides that the trainer is responsible for the condition of the horse.
>
> The rule violations were based on the finding that, at the tested level, 3-MT constituted a "foreign substance."
>
> Ohio Admin. Code 3769-18-01(A)(2) provides the following definition:
>
> "Foreign substances" shall mean all classified substances except those which exist naturally in the untreated horse at normal physiological concentrations and include all narcotics, stimulants, depressants or other drugs. The commission may, by order, establish a system of classification of prohibited foreign substances, to include methods of detection and/or regulatory thresholds thereof, recommended penalties and disciplinary measures for the presence of said substances in test samples. In determining the substances to be so classified, the commission shall give due consideration to the uniform classification guidelines of foreign substances and

> recommended penalties and model rules as revised from time to time by the association of racing commissioners international inc.

(Dec. 26, 2017 Decision at 3.)

{¶ 17} The common pleas court further determined that the provision of Ohio Adm.Code 3769-18-01(A)(2) stating that the commission "shall give due consideration" to ARCI guidelines did not indicate that the commission actually had adopted the guidelines as to 3-MT. (Decision at 6.) The common pleas court reversed the commission's order, concluding that the standard on which the commission premised its order was neither promulgated by rule nor by an order establishing a system of classification, and thus was not in accordance with Ohio law. The common pleas court found it unnecessary to decide remaining issues Farina raised.

> As in *DelBianco*, the Commission is applying in this case, a standard with regard to prohibited levels of foreign substances which had a uniform and general operation. The [Common Pleas] Court concludes that the Commission's Order, based on a standard as to prohibited levels of 3-MT that was neither promulgated by rule nor by an order establishing a system of classification, is not in accordance with law. It is unnecessary to reach the remaining issues raised by [Farina].

(Decision at 6.)

{¶ 18} The commission timely appealed the common pleas court's decision to this Court.

## II. ASSIGNMENT OF ERROR

{¶ 19} The commission presents for our review a single assignment of error:

> The Ohio State Racing Commission's order was supported by reliable, probative and substantial evidence and was in accordance with law and the lower court erred in concluding otherwise.

## III.  LAW AND DISCUSSION

### A.  Standard of Review

{¶ 20} An appellate court's review of an administrative decision is more limited than that of a common pleas court. *Pons v. State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The role of an appellate court when reviewing the common pleas court's appellate review of an administrative appeal is to determine if the common pleas court abused its discretion. An

abuse of discretion occurs when a trial court's discretionary judgment is unreasonable, arbitrary, or unconscionable. *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, 155 Ohio St.3d 14, 2018-Ohio-3342, ¶ 12; *State v. Meek*, 10th Dist. No. 16AP-549, 2017-Ohio-9258, ¶ 23. Even under an abuse of discretion standard, however, "no court has the authority, within its discretion, to commit an error of law." *Shaw v. Underwood*, 10th Dist. No. 16AP-605, 2017-Ohio-845; *State v. Akbari*, 10th Dist. No. 13AP-319, 2013-Ohio-5709, ¶ 7. In other words, " '[a] court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts.' " *Independence v. Office of the Cuyahoga Cty. Exec.*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 49, quoting *Doe v. Natl. Bd. of Med. Examiners*, 199 F.3d 146, 154 (3d Cir.1999). Absent an abuse of discretion on the part of the common pleas court, this Court may not substitute its judgment for that of the commission or the common pleas court. *Pons* at 621, citing *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260-61 (1988).

{¶ 21} The common pleas court found that the commission's order was not in accordance with law. This Court has de novo review of questions of law. *Gross v. Ohio State Med. Bd.*, 10th Dist. No. 08AP-437, 2008-Ohio-6826, ¶ 16, citing *Chirila v. Ohio State Chiropractic Bd.*, 145 Ohio App.3d 589, 592 (10th Dist.2001), citing *Steinfels v. Ohio Dept. of Commerce, Div. of Sec.*, 129 Ohio App.3d 800, 803 (10th Dist.1998), *appeal not allowed*, 84 Ohio St.3d 1488. *See also Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992); *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 501 (10th Dist.2003). Thus, when reviewing this appeal of a common pleas court's appellate review of a state administrative order, this Court uses the same standard as the common pleas court in determining whether the commission's decision is in accordance with law. Thus, our review is independent and without deference to the common pleas court's determination.

### B. Assignment of Error

{¶ 22} The commission argues there was reliable, probative, and substantial evidence to support its order finding that the Farina-trained horse possessed a foreign substance in violation of Ohio Adm.Code 3769-18-01(B)(1) because the unrefuted evidence found that the horse's body contained 3-MT at more than 14.6 times the amount that occurs naturally in an untreated horse at normal physiological concentrations, and 5 times the regulatory threshold at the OATL. The commission further argues that the common pleas

court erred in requiring the commission to establish a separate regulatory standard for the threshold amount that would constitute a violation of the commission's racing rules. The commission contends that its "interpretation of its rule is reasonable and within its broad authority to regulate horse racing." (Commission's Brief at 25.) The commission submits, therefore, that the common pleas court erred in finding that Farina had not violated the commission's rules and, thus, erred in concluding that the commission's order was not in accordance with law. This argument is purely a question of law.[9]

{¶ 23} Consequently, we limit our review to the common pleas court's determination that the order was not in accordance with law. The issues we must determine are (1) whether or not the commission established a standard regarding prohibited 3-MT concentrations, and (2) if so, whether such standard was properly promulgated by rule or order in accordance with Ohio Adm.Code 3769-18-01(A)(2). As we noted in our background discussion relating to the commission's appeal, the common pleas court determined that this Court's decision in *DelBianco* was controlling, notwithstanding the subsequent amendment of Ohio Adm.Code 3769-18-01. We agree.

{¶ 24} In *DelBianco*, the trainer was charged with violating Ohio Adm.Code 3769-18-01(B)(1) and 3769-18-02 after a horse's test results resulted in a finding of an abnormal level of total carbon dioxide ("tCO[2]"). The commission had sought to establish a threshold level at which tCO[2] would be considered a foreign substance by simply adopting the standard used by the International Conference of Racing Authorities. The trainer argued that the finding of violations was unlawful because the commission had attempted to establish the threshold violation without promulgating a rule.

{¶ 25} This Court agreed with the trainer and reversed the commission's order, stating in part:

> The alleged violation in the case at bar was not that a foreign substance in and of itself was found * * * but that a naturally-occurring substance may have been in [the horse] at an unnatural level. In the present suit, the agency itself, * * *, set a standard threshold amount at which a violation would be found (*i.e.*, the presence of such naturally-occurring substance at an unnatural concentration). It is the

---

[9] We note that the common pleas court did not address Farina's argument that the commission's order was not based on reliable, probative, and substantial evidence. Rather, it determined only that the order was not in accordance with law.

> establishment of such standard, *by the administrative agency itself* and without the benefit of rule-making procedures, that constitutes the unlawful actions herein. * * *
>
> Given all of the above, we conclude that appellant adopted a standard with regard to prohibited tCO[2] levels in horses which had a uniform and general operation. This standard was enforced against appellee. We note that this was not a case in which appellant determined, on a case-by-case basis, whether the tCO[2] level in [the horse] constituted a prohibited foreign substance. * * *
>
> Such standard was never promulgated under the procedures set forth in R.C. Chapter 119. Hence, appellant's order, which was based on such invalid "rule," is not in accordance with law. The common pleas court did not err in so concluding. * * *

(Emphasis sic.) *DelBianco* at *13. This Court found that the commission was enforcing against the trainer a standard it had adopted regarding prohibited levels of foreign substances that had a uniform and general operation. Although the commission had adopted the standard, it never promulgated the standard under the procedure set forth in R.C. Chapter 119, rendering it invalid. Consequently, the commission's order was not in accordance with Ohio law because it was based on an invalid rule. This Court concluded, therefore, that the common pleas court had not erred in reversing the commission's order. *DelBianco* at *14.

{¶ 26} The common pleas court compared the facts of *DelBianco* to those in the underlying matter, stating:

> It is undisputed that, as in *DelBianco*, the Commission did not promulgate a rule establishing a standard threshold amount at which a violation would be found for 3-MT. As noted, the Commission's threshold was based on the uniform classification guidelines of ARCI. (T. 123-124).
>
> The Commission distinguishes *DelBianco* on the basis that the definition of "foreign substances" in Ohio Admin. Code 3769-18-01(A)(2) has since changed. The Court in *DelBianco* noted the change, but stated that it became effective after the alleged violation therein. (2001 Ohio App. LEXIS, p. 7). The definition of "foreign substances" was changed to add the following:
>
> *The commission may, by order, establish a system of classification of prohibited foreign substances, to include* methods of detection and/or *regulatory thresholds* thereof …

> In determining the substances to be so classified, the commission shall give due consideration to the uniform classification guidelines of foreign substances and recommended penalties and model rules as revised from time to time by the association of racing commissioners international inc. (emphasis added).
>
> To summarize, *DelBianco* held that the Commission could not, without promulgating a rule, adopt a standard with regard to prohibited levels of foreign substances which had a uniform and general operation. However, the language since added to Ohio Admin. Code 3769-19-01(A)(2) states that the Commission has another alternative method of establishing such a standard, as it "may, by order, establish a system of classification of prohibited foreign substances ..."

(Decision at 4-5.)

{¶ 27} The common pleas court found *DelBianco* to be controlling because the commission in the instant matter, like the commission in *DelBianco*, sought to enforce a standard that had not been established according to state administrative law. The common pleas court stated:

> *The record reflects that the Commission has neither promulgated a rule nor issued an order establishing a standard with regard to prohibited levels of 3-MT.*
>
> * * *
>
> * * * [Ohio Adm.Code 3769-18-01(A)(2)] merely provides that the Commission "may, by order establish a system of classification" and that in determining the substances to be so classified, "the commission shall give due consideration to the uniform classification guidelines ..." As noted, there is no evidence in the record that the Commission issued such an order. Moreover, the provision stating that the Commission "shall give due consideration" to the ARCI guidelines obviously does not indicate that the Commission has in fact adopted the guidelines as to 3-MT.

(Emphasis added.) (Decision at 5-6.)

{¶ 28} We find the common pleas court's interpretation of the law and its application to Farina's factual situation to be sound. Because no error has been assigned to any factual findings made or relied on by the common pleas court necessitating a review for

abuse of discretion, our de novo review is determinative of this appeal.[10]  We conclude that, because Farina was found in violation of a standard that had not been established by a properly promulgated rule or properly adopted rule, and that there is no evidence in the record that the commission had issued an order adopting the ARCI guidelines as to 3-MT, the commission's order was not in accordance with law and is, therefore, invalid.

{¶ 29} Accordingly, the common pleas court did not err in concluding that the commission's order was not in accordance with law.  The commission's sole assignment of error is overruled.

## IV.  CONCLUSION

{¶ 30} Based on the foregoing reasons, we overrule the commission's sole assignment of error.  The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BROWN and SADLER, JJ., concur.

_____

[10] We note, however, that we have held it is an abuse of discretion for a court to commit an error of law.  *Ohio Dept. of Job & Family Servs. v. Delphi Automotive Sys., Inc.*, 10th Dist. No. 14AP-971, 2017-Ohio-809, ¶ 14, citing *State v. Jones*, 10th Dist. No. 15AP-596, 2016-Ohio-4766, ¶ 15, citing *State v. Moncrief*, 10th Dist. No. 13AP-391, 2013-Ohio-4571, ¶ 7; *see also JPMorgan Chase Bank, N.A. v. Liggins*, 10th Dist. No. 15AP-242, 2016-Ohio-3528, ¶ 18, quoting *State v. Akbari*, 10th Dist. No. 13AP-319, 2013-Ohio-5709, ¶ 7.