[Cite as *Rhoades v. Ohio State Racing Comm.*, 2026-Ohio-113.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| William Rhoades, | : | |
| Appellant-Appellant, | : | |
| v. | : | No. 25AP-443<br>(C.P.C. No. 23CV-7972) |
| Ohio State Racing Commission, | : | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on January 15, 2026

**On brief:** *Alison Boggs*, for appellant. **Argued:** *Alison Boggs*.

**On brief:** *Dave Yost*, Attorney General, and *Todd K. DeBoe*, for appellee. **Argued:** *Todd K. DeBoe*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Appellant-appellant, William Rhoades, appeals the May 15, 2025 judgment of the Franklin County Court of Common Pleas affirming an order issued by appellee-appellee, Ohio State Racing Commission ("the Commission"), finding that Rhoades violated the Commission's rules and imposing penalties on him. For the following reasons, we reverse and remand.

## I. Facts and Procedural History

{¶ 2} On November 8, 2022, a horse named ShesWildNFree won a race at Northfield Park racetrack. Rhoades was the trainer for ShesWildNFree. Following the race, blood and urine samples were collected from ShesWildNFree. The blood sample was tested at the Analytical Toxicology Laboratory of the Ohio Department of Agriculture and found

to contain D-methamphetamine. Rhoades requested split sample analysis by an independent laboratory, which confirmed the positive result for D-methamphetamine.

{¶ 3} The Northfield Park track judges conducted a hearing on February 11, 2023, and issued a ruling finding a violation of the Commission's rules based on the positive blood test result for D-methamphetamine. The track judges disqualified ShesWildNFree from the November 8, 2022 race, ordered the return of the race purse of $2,750, and imposed a $1,000 fine and 365-day license suspension against Rhoades.[1] The track judges further ordered that during the suspension Rhoades was barred from any racing grounds governed by the Commission and that the transfer of any of Rhoades's horses to another owner or trainer must be approved by the track judges. Rhoades appealed the track judges' ruling.

{¶ 4} A Commission hearing officer conducted a hearing on the appeal on August 25, 2023. The Commission's attorney asserted that D-methamphetamine was a "Class 1A penalty prohibited substance" under the guidelines of the Association of Racing Commissioners International ("ARCI"), "which the Ohio Administrative Code allows the Racing Commission to use as a guide and for guidance."[2] (Aug. 25, 2023 Tr. at 6.) The Commission's attorney further argued that Rhoades was responsible for the condition of ShesWildNFree under the absolute insurer provision of the regulations governing horse racing. Rhoades's attorney asserted that the testing laboratory used by the Commission failed to perform urine tests that could have established that the positive blood test resulted from external contamination. Rhoades's attorney also argued that the absolute insurer rule was unconstitutional.

---

[1] The track judges' ruling further provided that if Rhoades paid the fine within 10 days of the ruling and did not appeal the ruling, the suspension would be reduced to 60 days with 305 days stayed pending no Class 1 or Class 2 positive test results within the next year.

[2] The Commission's attorney later reiterated this argument in his closing statement:

> The testimony today established that there was a positive finding for D methamphetamine. Again, it was a class 1A penalty substance, it is a prohibited substance under RACI guidelines. The administrative code permits the Commission to consult the RACI guidelines to determine when a substance is prohibited. It is prohibited under the RACI guidelines; therefore it is proper for the Commission in this case to determine that this is [a] prohibited substance and the penalty imposed was appropriate.

(Sic passim.) (Aug. 25, 2023 Tr. at 228-29.)

{¶ 5} Dr. Jeri Ellen Clapp, the state veterinarian at Northfield Park testified at the hearing about the procedures used to take post-race blood and urine samples from horses. She testified that the standard operating procedures did not require the veterinarian or the technicians drawing blood and urine samples to wear gloves when handling the horses.

{¶ 6} Soobeng Tan, the laboratory director for the Ohio Department of Agriculture's Analytical Toxicology Laboratory, testified about the tests performed on the samples taken from ShesWildNFree. Tan testified that the blood sample consisted of three blood tubes and that, for purposes of testing, the contents of two of the tubes were combined to create a test sample. The third tube was reserved for DNA testing if requested. If, as in this case, a split sample test was requested the remainder of the test sample created by combining the two tubes would be sent for independent testing. Tan stated that the blood sample from ShesWildNFree was tested by liquid chromatography mass spectrometry and found to show the presence of D-methamphetamine. Tan explained that the urine sample from ShesWildNFree was not tested for the presence of methamphetamine, based on testing instructions issued to his lab by the former deputy director of the Commission in November 2019.

{¶ 7} The presiding track judge of Northfield Park, Lester Teeters, testified about the hearing conducted by the track judges. Teeters testified that at the track judge hearing, Rhoades asserted that some of his employees were on the prescription medication Adderall. Teeters explained that the penalty imposed by the track judges was based on ARCI guidelines.

{¶ 8} Rhoades testified about pre-race and post-race procedures at the Northfield Park track. Rhoades asserted that his barn at Northfield Park was very organized and clean but claimed that the paddock area where horses were held before racing was generally dirty and not cleaned or disinfected. Rhoades stated he had no control over the conditions or cleanliness of the paddock area. Rhoades estimated there could be up to 50 people in the pre-race paddock area, including grooms, drivers, trainers, and track employees. He also testified that the "state barn" where post-race blood and urine samples were taken was "filthy" and that the stalls were not disinfected. (Aug. 25, 2023 Tr. at 190.) Rhoades introduced photos of the state barn taken in February 2023, purporting to show dirty

conditions and veterinarians and technicians handling the horses without gloves. Rhoades denied administering methamphetamine to ShesWildNFree.

{¶ 9}  Rhoades presented expert witness testimony from Clara Fenger, DVM, who criticized the Commission's testing practices and asserted that more steps should have been taken to investigate data that could have refuted the positive blood test result. Dr. Fenger claimed that results from urine testing could be used to establish that a positive blood test result was caused by post-race contamination. She testified regarding an incident that occurred in Arkansas, where post-race contamination of a horse in a test barn had been established by comparing blood metabolites of a substance to urine metabolites of the substance, leading to a positive test result being overturned. Dr. Fenger also criticized the lab's procedure for handling blood samples, asserting it did not create a true split sample because two vials of blood were combined for use in the lab's testing and the unused remainder of that combined sample was sent to an independent lab for testing when requested. Dr. Fenger testified that a proper split sample method would involve sending the unused third vial of blood to be tested as the split sample. Dr. Fenger also discussed studies of methamphetamines in horses that were cited in her expert report. She testified that in her opinion the amount of methamphetamine found in ShesWildNFree was inconsequential and likely the result of contamination rather than intentionally administered to the horse.

{¶ 10}  Rhoades also called Commission Deputy Director Tanya Boulmetis to testify as a witness. Boulmetis was questioned about the Commission's use of the ARCI guidelines and testified that the Commission had not formally adopted the ARCI guidelines as a rule:

> Q: [The ARCI guidelines] are relied on by Judge Teeters and my question for you is when did the Ohio State Racing Commission formally pass a resolution creating an order that that set, that the model rule set was to be used by the judges in the various parks?
>
> A: To my knowledge it's been there for a much, much longer time than I have been with the Commission. But they are guidelines so we do not formally have an order that we must use them, they were not incorporated by reference. It's a guideline, it's a suggestion. It's not a rule.
>
> Q: Okay.

A: So, we don't need a resolution.

(Aug. 25, 2023 Tr. at 213.)

{¶ 11} The Commission hearing officer issued a report and recommendation, including findings of fact and conclusions of law, recommending that the Commission uphold the track judges' ruling and the penalties imposed by that decision. Rhoades filed objections to the hearing officer's report and recommendation.

{¶ 12} At a meeting on October 25, 2023, the Commission considered Rhoades's objections to the hearing officer's report and recommendation. The Commission voted unanimously to adopt the hearing officer's report and recommendation and uphold the track judges' ruling. The Commission directed that Rhoades be suspended for 365 days and fined $1,000.

{¶ 13} Rhoades appealed the Commission's order adopting the hearing officer's report and recommendation to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. The common pleas court issued a decision affirming the Commission's order, concluding that the order was supported by reliable, probative, and substantial evidence and was in accordance with law.

## II. Assignments of Error

{¶ 14} Rhoades appeals and assigns the following three assignments of error for our review:

> [I.] The trial court's decision to affirm the decision of the Commission is an abuse of discretion, against the manifest weight of the evidence and contrary to the current legal precedent in the 10th District.
>
> [II.] The trial court erred when it failed to find that Ohio Administrative Code 3769-18-02(A) is unconstitutional on its face and as applied and it [is] otherwise contrary to law.
>
> [III.] The trial court erred and abused its discretion when it failed to properly analyze Appellant's argument that the Commission was not given the authority to order the return of purse by the General Assembly.

## III. Discussion

### A. Standard of review

{¶ 15} The Commission is authorized by law to prescribe the rules and conditions for horse racing and to issue, deny, suspend, or revoke permits to conduct horse racing. R.C. 3769.03. This includes the authority to adopt rules prescribing the issuance of participant licenses, including licenses for horse trainers. R.C. 3769.031(B)(1)(b).[3] The Commission's issuance, denial, suspension, or revocation of a license is subject to appeal under R.C. Chapter 119. R.C. 3769.031(C)(4).

{¶ 16} In an appeal under R.C. 119.12, the common pleas court reviews the entire record to determine whether an agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. *Watkins v. Ohio Bd. of Edn.*, 2023-Ohio-2595, ¶ 16 (10th Dist.). Evidence is reliable when it can be confidently trusted and has a reasonable probability of being true, probative when it tends to prove the issue in question and is relevant to determining the issue, and substantial when it has importance and value. *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). The common pleas court's review "is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court must assess the evidence regarding the credibility of witnesses and the probative value of the evidence." *Gardenhire v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-4331, ¶ 9 (10th Dist.).

{¶ 17} On appeal to this court, we review for abuse of discretion a common pleas court's determination that an agency's order was supported by reliable, probative, and substantial evidence. *Watkins* at ¶ 17. "Absent an abuse of discretion on the part of the trial court, an appellate court may not substitute its judgment for the judgment of the agency or a trial court." *Id.* "However, 'on the question of whether the agency's order was in accordance with law, this court's review is plenary.' " *Id.*, quoting *Leslie v. Ohio Dept. of Dev.*, 2007-Ohio-1170, ¶ 44 (10th Dist.).

{¶ 18} An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable, but there is no discretion to commit an error of law. *See Mangan v.*

---

[3] At the time of the events relevant to this appeal, the statutory provisions related to the Commission's authority to issue licenses and appeal from the Commission's decisions were contained in R.C. 3769.03. As of April 9, 2025, certain provisions have been relocated to the newly enacted R.C. 3769.031. *See Lupton v. Ohio State Racing Comm.*, 2025-Ohio-4984, ¶ 13, fn. 1 (10th Dist.).

*Morocho & Garcia Constr., L.L.C.*, 2024-Ohio-2241, ¶ 24 (10th Dist.). "An appellate court is not permitted to find an abuse of discretion merely because it would have arrived at a different result if it had reviewed the matter de novo." *Newsome v. Mt. Carmel Health Sys.*, 2005-Ohio-6853, ¶ 3 (10th Dist.). *See AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990) ("A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.").

### B. Whether the Commission's order was in accordance with law

{¶ 19}  In his first assignment of error, Rhoades argues that the Commission's order was not in accordance with law because the Commission failed to establish that it had promulgated a rule classifying D-methamphetamine as a prohibited foreign substance. Rhoades asserts this court has previously reversed Commission orders imposing penalties on horse trainers following positive blood or urine tests for a substance when the Commission failed to establish a properly promulgated rule or order designating that substance as being a prohibited foreign substance, citing *DelBianco v. Ohio State Racing Comm.*, 2001 Ohio App. LEXIS 4626 (10th Dist. Oct. 16, 2001), *Farina v. Ohio State Racing Comm.*, 2019-Ohio-3903 (10th Dist.), *Pokornowski v. Ohio State Racing Comm.*, 2019-Ohio-4264 (10th Dist.), and *Boggs v. Ohio State Racing Comm.*, No. 23AP-342 (10th Dist. Dec. 7, 2023).

{¶ 20} The Commission asserts its order was in accordance with law because D-methamphetamine is a stimulant and all stimulants and narcotics were included in the definition of foreign substances under the Commission's rules. The Commission cites *Cowans v. Ohio State Racing Comm.*, 2014-Ohio-1811 (10th Dist.), and argues the rules create a zero tolerance policy for foreign substances in horses unless the Commission creates an exception or adopts a permissible threshold level of the substance. The Commission asserts that the appellate court decisions cited by Rhoades are distinguishable because they involved naturally occurring substances, which require the Commission to promulgate a rule establishing a level at which the substance was prohibited, and that in those cases the court found the Commission had not promulgated such a rule.

{¶ 21} The common pleas court concluded that D-methamphetamine was within the definition of a foreign substance under the Commission's rules because it was a stimulant that did not naturally occur in horses. The court relied on this court's decision in *Cowans* for the principle that the Commission's rules establish a zero tolerance policy for the presence of foreign substances in a horse unless the Commission creates an exception or establishes a permissible threshold level for a substance.

{¶ 22} At the time of the positive blood test result that led to the Commission's penalty against Rhoades, the Commission's rules provided that "[e]xcept for regulatory thresholds of such non-steroidal anti-inflammatory drugs authorized for use by order of the commission, and except for those horses eligible for the use of furosemide as permitted by [Adm.Code 3769-18-01(B)(1)(b)], no horse entered to race shall carry in its body on race day any prohibited foreign substance." Former Adm.Code 3769-18-01(B)(1), 2022-2023 Ohio Monthly Record 2-469 (effective Oct. 1, 2022). The rules further provided that "[a] finding by the chemist that a foreign substance other than a test level of furosemide or any non-steroidal anti-inflammatory drug authorized for use by order of the commission, as permitted in [Adm.Code 3769-18-01(B)(1)(a)], is present in the urine or blood sample shall be considered a positive test and a violation of this rule" and "it shall be prima facie evidence that such foreign substance was administered and carried in the body of the horse while participating in a race and that the trainer and his agents responsible for the care and custody of the horse have been negligent in the handling or care of the horse." Former Adm.Code 3769-18-01(B)(10), 2022-2023 Ohio Monthly Record 2-470, 2-471 (effective Oct. 1, 2022). The Commission's rules also defined "foreign substances" as follows:

> "Foreign substances" shall mean all classified substances except those which exist naturally in the untreated horse at normal physiological concentrations and include all narcotics, stimulants, depressants or other drugs. The commission may, by order, establish a system of classification of prohibited foreign substances, to include methods of detection and/or regulatory thresholds thereof, recommended penalties and disciplinary measures for the presence of said substances in test samples. In determining the substances to be so classified, the commission shall give due consideration to the uniform classification guidelines of foreign substances and recommended penalties and model rules as revised from time to time by the association of racing commissioners international inc.

Former Adm.Code 3769-18-01(A)(2), 2022-2023 Ohio Monthly Record 2-468 (effective Oct. 1, 2022).

{¶ 23} This court has considered the Commission's imposition of penalties for violating the rules governing prohibited foreign substances in many cases, including those cited by Rhoades and by the Commission in support of their arguments in this appeal. In *DelBianco*, the Commission imposed penalties on a horse trainer for violating Adm.Code 3769-18-01(B)(1) and 3769-18-02(A) when a horse's blood sample was found to contain an excess concentration of total carbon dioxide. *DelBianco*, 2001 Ohio App. LEXIS 4626, at *1-2 (10th Dist. Oct. 16, 2001). Carbon dioxide is a naturally occurring substance in a horse's blood. *Id.* at *4. During the administrative proceedings, a Commission hearing officer found that the Commission had directed its testing laboratory to use the total carbon dioxide threshold levels adopted by the International Conference of Racing Authorities when testing blood samples. *Id.* at *5. On appeal to the common pleas court, the trainer argued that the Commission had effectively established a threshold level at which total carbon dioxide would be considered a prohibited foreign substance in a horse but failed to promulgate a rule adopting that standard. *Id.* at *7. The common pleas court agreed, concluding that the Commission's order was not in accordance with law because the Commission failed to properly promulgate a rule establishing an excessive total carbon dioxide level for racehorses. *Id.* at *4. On appeal to this court, the Commission asserted that any substance found at an abnormal physiological concentration was considered a prohibited foreign substance under the Commission's rules. *Id.* at *7. Based on the evidence that had been presented to the hearing officer, this court concluded that the Commission had adopted a threshold standard for total carbon dioxide as a matter of policy by relying on the level set by the International Conference of Racing Authorities but had not promulgated that standard under the procedures required by R.C. Chapter 119. *Id.* at *14-15. This court affirmed the common pleas court's decision, concluding that a Commission order imposing a penalty for violating a rule that had not been properly promulgated was not in accordance with law and was invalid. *Id.* at *15.

{¶ 24} Both *Farina* and *Pokornowski* involved penalties imposed on horse trainers when their horses were found to have excess levels of 3-methoxytyramine, a naturally occurring substance in horses. *Farina*, 2019-Ohio-3903, at ¶ 3-4 (10th Dist.);

*Pokornowski*, 2019-Ohio-4264, at ¶ 2 (10th Dist.). In both cases, the Commission issued rulings finding that the horse trainers had violated Adm.Code 3769-18-01(A)(2) and (B)(1). *Farina* at ¶ 5, 12; *Pokornowski* at ¶ 3, 9. The trainers appealed to the common pleas court, which in both cases reversed because the Commission had not established that it promulgated a rule or issued an order establishing a standard for prohibited levels of 3-methoxytyramine. *Farina* at ¶ 15; *Pokornowski* at ¶ 20. On appeal in *Farina*, this court concluded that the Commission was enforcing a standard for 3-methoxytyramine that had not been established by a properly promulgated or adopted rule. The Commission's witnesses had referred to the ARCI guidelines for 3-methoxytyramine but there was no evidence in the record that the Commission had issued an order adopting those guidelines. Therefore, this court concluded that the Commission's order was not in accordance with law and was invalid. *Farina* at ¶ 28. This court reached the same result in *Pokornowski*, concluding the appeal presented the identical issue that had been present in *Farina*. *Pokornowski* at ¶ 22-23.

{¶ 25} In *Boggs*, the Commission imposed a penalty on a horse trainer after one of his horses tested positive for boldione, an anabolic steroid. *Boggs*, No. 23AP-342, at ¶ 2 (10th Dist. Dec. 7, 2023). During the administrative proceedings, evidence was presented that boldione is a naturally occurring substance in horses. *Id.* at ¶ 5. A Commission hearing officer concluded that boldione was a prohibited foreign substance because it was included on a list of prohibited substances published on the Commission's official website and, therefore, that a detectible level of boldione in a horse constituted a violation of the Commission's rules. *Id.* at ¶ 7. On appeal to the common pleas court, the Commission asserted that boldione was a prohibited substance under the ARCI guidelines for foreign substances and that the Commission was permitted to consult those guidelines when determining whether a substance was prohibited. *Id.* at ¶ 10. The common pleas court affirmed the Commission's order, concluding it was in accordance with law because the Commission had determined that a detectible level of boldione constituted a prohibited foreign substance. *Id.* at ¶ 12. This court reversed the common pleas court, concluding that the Commission's decision was not in accordance with law. *Id.* at ¶ 26. This court found that although the Commission sought to rely on the ARCI guidelines in the administrative proceeding, there was "no evidence that the commission promulgated a rule or issued an

order in accordance with Ohio Adm.Code 3769-18-01(A)(2) adopting the ARCI Guidelines with respect to boldione." *Id.*

{¶ 26} Although the present case involves a positive blood test for D-methamphetamine, which does not naturally occur in horses, we find that the principles underlying our decisions in *DelBianco*, *Farina*, *Pokornowski*, and *Boggs* apply with equal force here. The Commission's rules provided that "no horse entered to race shall carry in its body on race day any *prohibited* foreign substance." (Emphasis added.) Former Adm.Code 3769-18-01(B)(1), 2022-2023 Ohio Monthly Record 2-469 (effective Oct. 1, 2022). Thus, the plain language of the rule did not prohibit a horse from having *any* foreign substance in its body, but only a *prohibited* foreign substance. The rules defined "foreign substances" as all classified substances except those occurring naturally in an untreated horse at normal physiological concentrations, including all stimulants. Former Adm.Code 3769-18-01(A)(2), 2022-2023 Ohio Monthly Record 2-468 (effective Oct. 1, 2022). However, the rules did not expressly define what constituted a *prohibited* foreign substance. Instead, the rules provided that the Commission "*may*, by order, establish a system of classification of prohibited foreign substances[.]" (Emphasis added.) *Id.* The rules further required that in making such a system of classification, the Commission was required to give due consideration the ARCI's guidelines. *Id.*

{¶ 27} In this case, the Commission did not present any evidence establishing that it had issued an order or promulgated a rule classifying D-methamphetamine as a prohibited foreign substance. At the administrative hearing, the Commission's attorney and witnesses referred to the ARCI guidelines, which designate D-methamphetamine as a "Class 1" drug and recommend specific penalties when it is found in a horse. Teeters, the presiding track judge, testified that the penalties imposed in the track judges' ruling were based on the ARCI guidelines. Boulmetis testified that the Commission had relied on the ARCI guidelines since before her time at the Commission, but admitted the Commission "[did] not formally have an order that we must use [the ARCI guidelines], they were not incorporated by reference." (Aug. 25, 2023 Tr. at 213.) Boulmetis asserted the Commission did not need to pass a resolution adopting the ARCI guidelines because "[i]t's a guideline, it's a suggestion" and "[i]t's not a rule." (Aug. 25, 2023 Tr. at 213.) Although the ARCI guidelines were introduced as an exhibit at the hearing, there was no evidence that the

Commission had adopted the ARCI guidelines as a system of classification of prohibited foreign substances or otherwise designated D-methamphetamine as a prohibited foreign substance.[4]

{¶ 28} As noted above, the common pleas court cited this court's decision in *Cowans* in support of its conclusion, and the Commission cites that decision in support of its arguments on appeal to this court. However, the portion of *Cowans* relied on by the common pleas court and the Commission was dictum and the *Cowans* decision did not squarely consider the issue of whether the Commission had promulgated a rule defining the substance at issue in that case to be a prohibited foreign substance. *Cowans* involved a penalty imposed on a horse trainer after a testing revealed a positive finding for Ranitidine, a medication used to treat gastric ulcers. *Cowans*, 2024-Ohio-1811, ¶ 2 (10th Dist.).[5] As relevant to this appeal, the trainer in *Cowans* challenged the Commission's decision as not being in accordance with law because of failure to issue a proper notice of opportunity for a hearing, failure to consider the trainer's objections to the hearing officer's report and recommendation, and because the hearing examiner construed the return of the race purse as a mandatory penalty. *Id.* at ¶ 27. Notably, the trainer in *Cowans* did *not* argue that the Commission failed to establish that Ranitidine was a prohibited foreign substance. In its analysis of whether the return of the race purse was a mandatory or discretionary penalty, this court described the regulatory framework for horse racing and asserted that Ranitidine was a foreign substance by definition because it did not exist naturally in an untreated horse at normal physiological concentrations. *Id.* at ¶ 43. The court then asserted that the Commission's rule "establishes a zero tolerance policy for the presence of foreign

---

[4] While they are not binding on this court, we note that Rhoades cites two decisions from the Franklin County Court of Common Pleas that relied on *Boggs* when reversing Commission decisions imposing penalties arising from positive test results for methamphetamines. In *Hagerman v. Ohio State Racing Comm.*, Franklin C.P. No. 23CV-8375 (Mar. 26, 2024), the common pleas court cited this court's reasoning in *Boggs* and found that the Commission had not promulgated a rule or issued an order establishing that D-methamphetamine was a prohibited foreign substance. The court reached the same conclusion in *McGinnis v. Ohio State Racing Comm.*, Franklin C.P. No. 23CV-8394 (Aug. 6, 2025), once again citing the reasoning in *Boggs* and finding that the Commission had not promulgated a rule or issued an order establishing that methamphetamine was a prohibited foreign substance.

[5] The penalties in *Cowans* were imposed for violating provisions of Adm.Code 3769-2-26, 3769-8-01 and 3769-8-02, during a horse race in February 2012. *Cowans* at ¶ 2. It appears that the relevant portions of Adm.Code 3769-8-01 in effect at the times relevant to *Cowans* were identical to the relevant portions of Adm.Code 3769-18-01 in effect at the times relevant to the present case.

substances in race horses unless the Commission creates an exception or establishes a permissible threshold level of the foreign substance." *Id.* However, the *Cowans* decision appears to have overlooked the significance of the word *prohibited* in the relevant rule. We agree that the Commission's rules set a zero tolerance policy for *prohibited* foreign substances, providing that "no horse entered to race shall carry in its body on race day any *prohibited* foreign substance." (Emphasis added.) Former Adm.Code 3769-18-01(B)(1), 2022-2023 Ohio Monthly Record 2-469 (effective Oct. 1, 2022). But the *Cowans* decision did not address the apparent gap in the Commission's rules—i.e., the fact that the Commission's rules only defined the term "foreign substance" and then provided that the Commission may, by order, establish a system of classification of *prohibited* foreign substances. Therefore, the "zero tolerance policy" language in *Cowans* does not control our analysis in this case.

{¶ 29} Under the applicable rules at the relevant time, the Commission was authorized to establish a system of classification of prohibited foreign substances. The rules required the Commission to *consider* the ARCI guidelines when establishing such a system of classification but did not adopt the ARCI guidelines as the system of classification. There was no evidence presented in this case to establish that the Commission promulgated a rule or issued an order adopting the ARCI guidelines or otherwise classifying D-methamphetamine as a prohibited foreign substance. Therefore, the ARCI guidelines did not have the force of law. Because there was no evidence of a rule or order classifying D-methamphetamine as a prohibited foreign substance, the Commission's order finding Rhoades to be in violation of the Commission's regulations because of the positive D-methamphetamine result was not in accordance with law and is invalid. *See Boggs*, No. 23AP-342, at ¶ 26 (10th Dist. Dec. 7, 2023) ("[T]here is no evidence that the commission promulgated a rule or issued an order in accordance with Ohio Adm.Code 3769-18-01(A)(2) adopting the ARCI Guidelines with respect to boldione. Accordingly, the commission's adjudication order is not in accordance with law, and the common pleas court should have reversed the adjudication order."); *Farina*, 2019-Ohio-3903, at ¶ 28 (10th Dist.) ("We conclude that, because Farina was found in violation of a standard that had not been established by a properly promulgated rule or properly adopted rule, and that there is no evidence in the record that the commission had issued an order adopting the ARCI

guidelines as to 3-MT, the commission's order was not in accordance with law and is, therefore, invalid."). Accordingly, we sustain Rhoades's first assignment of error.

### C. Constitutionality of the absolute insurer rule

{¶ 30} Rhoades argues in his second assignment of error that the common pleas court erred by failing to hold that the absolute insurer rule under Adm.Code 3769-18-02(A) is unconstitutional on its face and as applied to him in this case. In relevant part, Adm.Code 3769-18-02(A) provides that a horse trainer "shall be the absolute insurer of, and responsible for, the condition of the horse entered in a race, regardless of the acts of third parties." The rule further provides that if a blood or urine test establishes the presence of a foreign substance not permitted under Adm.Code 3769-18-01, the trainer "may, in the discretion of the commission, be subjected to penalties provided in [Adm.Code. 3769-18-02(B)]." Adm.Code 3769-18-02(A).

{¶ 31} The doctrine of constitutional avoidance provides that "courts should not decide constitutional questions unless it is absolutely necessary to do so." *Epcon Communities Franchising, L.L.C. v. Wilcox Dev. Group, L.L.C.*, 2024-Ohio-4989, ¶ 17. *See State v. Talty*, 2004-Ohio-4888, ¶ 9 ("It is well settled that this court will not reach constitutional issues unless absolutely necessary."); *Hall China Co. v. Pub. Util. Comm.*, 50 Ohio St.2d 206, 210 (1977) ("Ohio law abounds with precedent to the effect that constitutional issues should not be decided unless absolutely necessary."). Because we conclude that the Commission's decision was not in accordance with law for the reasons set forth in our analysis of the first assignment of error, we need not reach the constitutional issue asserted in Rhoades's second assignment of error to reverse the common pleas court's decision. Accordingly, we dismiss as moot Rhoades's second assignment of error.

### D. Statutory authority to order the return of race purse

{¶ 32} In his third assignment of error, Rhoades argues the common pleas court erred by failing to hold that the Commission lacked authority to order the return of the race purse as a penalty for the positive blood test result. Rhoades asserts that the authority granted to the Commission under Revised Code Chapter 3769 does not include the power to order the return of a race purse. Because we conclude that the Commission's decision was not in accordance with law for the reasons set forth in our analysis of the first assignment of error, Rhoades's assertions about whether the Commission exceeded its

authority in imposing a penalty are rendered moot.  Accordingly, we dismiss as moot Rhoades's third assignment of error.

**IV.  Conclusion**

{¶ 33}  For the foregoing reasons, we sustain Rhoades's first assignment of error and dismiss as moot his second and third assignments of error.  We reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment reversed;*
*cause remanded.*

BEATTY BLUNT and MENTEL, JJ., concur.

_____